[No. F006933. Fifth Dist. June 15, 1987.]

DOROTHY M. FELIX et al., Plaintiffs and Appellants, v.
HIROSHI ASAI et al., Defendants and Respondents.

**COUNSEL**

Canelo, Hansen & Wilson and James P. Padron for Plaintiffs and Appellants.

Parichan, Renberg, Crossman & Harvey, Charles L. Renberg and Randall M. Penner for Defendants and Respondents.

## Opinion

**BEST, J.**—John Felix, a minor, sustained personal injuries when, while riding his bicycle, he was hit by a pickup truck owned and driven by Curtis Troxelle. A complaint seeking damages was filed by the minor's parents, Dorothy and Ernest Felix, individually and as guardians ad litem of John Felix, against Curtis Troxelle and his employers, Hiroshi and Paul Asai, individually and doing business as H & H Appliances (hereinafter H & H Appliances or defendants). The complaint alleged that Troxelle was acting within the scope of his employment at the time of the accident.

Defendants filed a motion for summary judgment on the ground that Troxelle was not acting within the scope of his employment at the time of the accident. Plaintiffs' appeal is from the order granting the motion entered on March 3, 1986, a nonappealable order. However, we treat the appeal as being from the judgment in favor of defendants entered on March 17, 1986. (*Schettler* v. *County of Santa Clara* (1977) 74 Cal.App.3d 990, 995, fn. 1 [141 Cal.Rptr. 731].)

### Facts

The critical facts are undisputed. Curtis Troxelle worked for H & H Appliances, which was located in the City of Merced. His working hours were Tuesdays through Fridays from 8 a.m. to 5 p.m. and Saturdays from 8 a.m. to 4 p.m. As part of his regular duties, he was frequently required to go on errands. For example, sometimes he was sent to the post office on 18th Street to deliver mail. At other times, he was sent to a different post office on M Street to pick up envelopes. His duties also included an occasional delivery of appliance parts to H & H workers in the field. H & H Appliances furnished three vehicles for the use of its employees on the job. However, for doing chores after hours or during hours, if a company vehicle was not available, Troxelle would use his own pickup truck. His employer gave him gas money on the spot, if he needed it to run a particular errand.

On the day of the accident, Troxelle was directed by his employer to deliver some mail to the post office on his way home from work. Troxelle left work to go to the post office just slightly before 5 p.m. H & H Appliances is located on the corner of 17th and R Streets. To get to the post office, which is located at 18th and K Streets, Troxelle crossed through a parking lot joining 17th and 18th Streets and drove approximately seven blocks east on 18th Street to the post office. He parked his truck, delivered the mail and then drove back on 18th Street in a westerly direction. The accident occurred when Troxelle reached the intersection of 18th and S Streets. Here, Troxelle began to turn left onto S Street and struck plaintiff,

John Felix. This intersection is located one block west and one block north of H & H Appliances.

Troxelle testified in his deposition that at the time of the accident, he was on his way to Atwater to have dinner with his parents. Troxelle also stated that he had intended to go to his parents house in Atwater for dinner after work. He did not plan to stop first at his apartment on Loughborough Drive after work, but was planning on driving directly to Atwater.

Troxelle also testified in his deposition that had he not been ordered to go to the post office after work, he would have driven straight to Atwater from H & H Appliances by the nearest route. He gave several routes he might have taken from work in driving to Atwater. Troxelle testified, however, that had the accident not occurred at 18th and S Streets, he would have driven south on S Street to 17th Street and turned right, and then from 17th Street, he could have traveled to the freeway on a variety of routes.

Based on these facts, the trial court held that once Troxelle had retraced his trip to the post office and gone beyond H & H Appliances, continuing toward Atwater, he was no longer in the course of his employment and granted the motion for summary judgment.

## DISCUSSION

On a motion for summary judgment, the matter to be determined by the trial court is whether facts have been presented which give rise to a triable issue. The court may not pass on the issue itself. Summary judgment is proper only if no triable issue of fact is presented and the affidavits and declarations of the moving party are sufficient to sustain a judgment in his favor. (*Empire West* v. *Southern California Gas Co.* (1974) 12 Cal.3d 805, 808 [117 Cal.Rptr. 423, 528 P.2d 31].) When, as here, a defendant is the moving party, his task is to negate completely an essential element of the plaintiff's case or to establish a complete defense. (*Caldwell* v. *A.R.B., Inc.* (1986) 176 Cal.App.3d 1028, 1034 [222 Cal.Rptr. 494].)

"Under well established rules governing summary judgment motions, the affidavits of the moving party are to be strictly construed and those of the opponent liberally construed. [Citation.] Nevertheless, a party opposing a motion for summary judgment which is supported by affidavits or declarations sufficient to sustain the motion, has the burden of showing that triable issues of fact exist." (*Chern* v. *Bank of America* (1976) 15 Cal.3d 866, 873 [127 Cal.Rptr. 110, 544 P.2d 1310].)

■ The sole theory of liability asserted against H & H Appliances in this case was that of vicarious liability for the negligence of its employee, Curtis Troxelle. To prevail upon their summary judgment motion, therefore, it was incumbent upon defendants to show, as a matter of law, that Troxelle was not acting in the scope of his employment at the time of the accident. Plaintiffs argued that Troxelle was within the scope of his employment at the time of the accident because he was returning from a special errand performed at the request of his employer. Defendants, however, argued that while Troxelle had been on a special errand, he had abandoned the business errand and was pursuing an entirely personal objective at the time of the accident. Hence, Troxelle was no longer acting in the scope of his employment when his car struck the plaintiff.

■ Under the doctrine of respondeat superior, an employer is liable for the torts of his employees committed within the scope of their employment. (*Ducey* v. *Argo Sales Co.* (1979) 25 Cal.3d 707, 721 [159 Cal.Rptr. 835, 602 P.2d 755].) Generally, an employee is outside the scope of his employment while engaged in his ordinary commute to and from his place of work. (*Id.* at p. 722.) This principle is known as the going-and-coming rule and is based on the theory that the employment relationship is suspended from the time the employee leaves his job until he returns and on the theory that during the normal everyday commute, the employee is not rendering services directly or indirectly to his employer. (*Hinman* v. *Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 961 [88 Cal.Rptr. 188, 471 P.2d 988].) Numerous exceptions to the going-and-coming rule, however, have been recognized by the courts. As stated by the Supreme Court in *Hinman* v. *Westinghouse Elec. Co.,* these exceptions are made where the employee's trip or commute "involves an incidental benefit to the employer, not common to commute trips by ordinary members of the work force." (*Id.* at p. 962.)

■ The special-errand exception to the going-and-coming rule is stated as follows: "If the employee is not simply on his way from his home to his normal place of work or returning from said place to his home for his own purpose, but is coming from his home or returning to it on a special errand either as part of his regular duties or at a specific order or request of his employer, the employee is considered to be in the scope of his employment from the time that he starts on the errand until he has returned or until he deviates therefrom for personal reasons." (*Boynton* v. *McKales* (1956) 139 Cal.App.2d 777, 789 [294 P.2d 733].)

Several general examples of the special-errand exception appear in the cases. One would be where an employee goes on a business errand for his

employer leaving from his workplace and returning to his workplace. Generally, the employee is acting within the scope of his employment while traveling to the location of the errand and returning to his place of work. (See *Westberg* v. *Willde* (1939) 14 Cal.2d 360 [94 P.2d 590].) The exception also may be applicable to the employee who is called to work to perform a special task for the employer at an irregular time. The employee is within the scope of his employment during the entire trip from his home to work and back to his home. (See *General Ins. Co.* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 595, 601-602 [128 Cal.Rptr. 417, 546 P.2d 1361].) The exception is further applicable where the employer asks an employee to perform a special errand after the employee leaves work but before going home. In this case, as in the other examples, the employee is normally within the scope of his employment while traveling to the special errand and while traveling home from the special errand. (*Trejo* v. *Maciel* (1966) 239 Cal.App.2d 487, 495 [48 Cal.Rptr. 765]; *Sun Indem. Co.* v. *Industrial Acc. Com.* (1926) 76 Cal.App. 165 [243 P. 892].)

■ Another exception to the going-and-coming rule recognized in both tort and workers' compensation cases is the vehicle-use exception. If an employer requires an employee to furnish a vehicle as an express or implied condition of employment, the employee will be in the scope of his employment while commuting to and from the place of his employment. (*Hinojosa* v. *Workmen's Comp. Appeals Bd.* (1972) 8 Cal.3d 150, 160 [104 Cal.Rptr. 456, 501 P.2d 1176]; *Huntsinger* v. *Glass Containers Corp.* (1972) 22 Cal.App.3d 803, 810 [99 Cal.Rptr. 666].)

■ However, even if an exception is found to be applicable, the employee may yet be found outside the scope of his employment if at the time of the accident he has completely abandoned his employer's business for personal reasons. (See *Loper* v. *Morrison* (1944) 23 Cal.2d 600, 604-607 [145 P.2d 1]; *Boynton* v. *McKales, supra,* 139 Cal.App.2d at p. 789; *Munyon* v. *Ole's, Inc.* (1982) 136 Cal.App.3d 697, 703 [186 Cal.Rptr. 424].) To constitute an abandonment, however, the deviation or departure from the employer's business to pursue a personal errand must be substantial and complete. (*Trejo* v. *Maciel, supra,* 239 Cal.App.2d at p. 496.) A mere deviation for personal reasons will be insufficient. Where the employee may be deemed to be pursuing a business errand and a personal objective simultaneously, he will still be acting within the scope of his employment.

In determining whether an employee has completely abandoned pursuit of a business errand for pursuit of a personal objective, a variety of relevant circumstances should be considered and weighed. Such factors may include

the intent of the employee, the nature, time and place of the employee's conduct, the work the employee was hired to do, the incidental acts the employer should reasonably have expected the employee to do, the amount of freedom allowed the employee in performing his duties, and the amount of time consumed in the personal activity. (*Loper* v. *Morrison, supra,* 23 Cal.2d at pp. 605-606; *Trejo* v. *Maciel, supra,* 239 Cal.App.2d at p. 496.) While the question of whether an employee has departed from his special errand is normally one of fact for the jury, where the evidence clearly shows a complete abandonment, the court may make the determination that the employee is outside the scope of his employment as a matter of law. (*Loper* v. *Morrison, supra,* at p. 605; *Caldwell* v. *A.R.B., Inc., supra,* 176 Cal.App.3d at p. 1035.)

As conceded by defendants, Troxelle had been sent on a special errand by his employer just prior to the accident. Slightly before Troxelle's normal quitting time, 5 p.m., he was sent to the post office on 18th and K Streets to deliver some mail for his employer. He was then authorized to go home. Consequently, Troxelle would have been acting within the scope of his employment during that portion of his journey between H & H Appliances and the post office, as well as that portion of his journey between the post office and his home on Loughborough Drive in Merced had Troxelle gone directly home. (*Trejo* v. *Maciel, supra,* 239 Cal.App.2d at p. 495.)

The pivotal question in this case, then, is whether Troxelle's clear and undisputed intent to go directly to his parents' home in Atwater from the post office constituted a complete abandonment of his employer's business. In our view, it did. Had Troxelle's parents lived in a place equally distant but at a location that would have caused Troxelle to drive from the post office in a direction away from both H & H Appliances and Troxelle's apartment, we doubt it would be argued seriously that Troxelle was still engaged in a special errand or on his employer's business after leaving the post office bound for his parents' home. So long as Troxelle intended to proceed directly to his parents' home, bypassing his own apartment on Loughborough Drive, we can see no logical or public policy reason for a different result where the location of the parents' home takes him in a direction leading back toward the employer's place of business, or toward Troxelle's own apartment, for that matter. In either case, once he has delivered the mail and leaves the post office intending to drive directly to his parents' home, he has completed his employer's business and is pursuing a purely personal objective. On the facts of this case, we hold that prior to the accident in which plaintiff, John Felix, was injured, Troxelle had completed his special errand for H & H Appliances, had completely abandoned his employer's business, was pursuing a purely personal objective, and was not

in the scope of his employment at the time of the accident. Summary judgment in favor of H & H Appliances, therefore, was properly granted by the trial court.

The judgment is affirmed. Respondents to have their costs on appeal.

Woolpert, Acting P. J., and Pettitt, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.