Filed 3/11/15  Maiello v. LA Digitial Post CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| RAYMOND MAIELLO,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>LA DIGITAL POST,<br><br>    Defendant and Respondent. | B255029<br><br>(Los Angeles County<br>Super. Ct. No. EC058784) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Samantha P. Jessner, Judge.  Affirmed.

McGuire Coats and Wendy McGuire Coats; The Simon Law Group and Brad M. Simon for Plaintiff and Appellant.

Slack and Associates, Chad M. Slack and Janelle M. White for Deborah Callaway as Amicus Curiae on behalf of Plaintiff and Appellant.

Bragg & Kuluva and Christina Y. Morovati for Defendant and Respondent.

———————————————

Appellant Raymond Maiello was involved in a car accident with Deborah Callaway, an employee of LA Digital Post. At the time of the collision, Callaway was returning to work from a doctor's appointment that she had attended while on her lunch break. Maiello filed a negligence claim against LA Digital under the doctrine of respondeat superior. LA Digital moved for summary judgment arguing that it could not be held vicariously liable for Callaway's conduct because she was attending a personal errand on her lunch break when the accident occurred. In opposition, Maiello contended that all of Callaway's travel to and from work fell within the scope of her employment because she regularly used her car for job-related activities. The trial court granted the motion and entered judgment in favor of LA Digital. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Traffic Accident and Maiello's Complaint[1]

Deborah Callaway was employed by LA Digital Post as a credit and collections manager. Callaway traveled to work in her own car and was not compensated for her commute time. As part of her job duties, Callaway regularly stopped at a bank during her commute home to make deposits on behalf of LA Digital.

On July 18, 2011, Callaway arrived at work sometime between 8:00 a.m. and 9:00 a.m. At approximately 10:00 a.m., Callaway left the office and drove to a doctor's appointment that had no relation to her employment. Callaway obtained permission to attend the appointment, which was treated as her lunch break. She did not engage in any work-related activity during the appointment. While driving back to the office, Callaway collided with a vehicle driven by Raymond Maiello.

Maiello filed a negligence action against Callaway for injuries he suffered in the accident. He later added LA Digital as a "Doe defendant," alleging that the company was vicariously liable for Callaway's conduct under the doctrine of respondeat superior.

---

[1] The background facts regarding Callaway's employment at LA Digital and the events that preceded the incident that gave rise to Maiello's negligence action are undisputed.

## B. *LA Digital's Motion for Summary Judgment*

LA Digital filed a motion for summary judgment arguing that the undisputed evidence demonstrated Callaway was not acting within the scope of her employment when the accident occurred because she was traveling back to the office from a personal errand while on her lunch break. In support, LA Digital cited numerous prior decisions holding that an employer is generally not liable for negligence of its employees that occurs while traveling during a lunch break.

Maiello conceded that the accident had occurred while Callaway was returning from a personal errand during her lunch break. He further conceded that an employee's travel to and from work during a commute or break period is generally deemed to be outside the scope of employment. Maiello argued, however, that LA Digital could nonetheless be held liable under the "required-vehicle" exception, which places an employee's commute within the scope of employment when the employer requires the employee to drive to and from work as a condition of employment. Maiello theorized that because Callaway regularly used her vehicle to make bank deposits for LA Digital, she was "'on the clock' anytime she [drove] to or from work."

The trial court granted LA Digital's motion for summary judgment, concluding that the "required-vehicle" exception only applied to an employee's commute to and from work and did not extend to personal travel during a lunch break. On February 10, 2014, the court entered judgment in favor of LA Digital.

## DISCUSSION

### A. *Legal Standards Governing Summary Judgment*

Summary judgment is appropriate when a defendant establishes through undisputed material facts that the plaintiff cannot prove a necessary element of his or her case, or that an affirmative defense bars the cause of action, and the plaintiff fails to present admissible evidence to the contrary. (Code Civ. Proc., § 437c, subd. (o)(2).) "[I]f there is no material fact to be tried and the sole question is whether the claim of the

moving party is tenable on the undisputed facts, the trial court's obligation is to determine that issue of law. [Citation.] On appeal, the reviewing court determines de novo whether an issue of material fact exists and whether the moving party was entitled to summary judgment as a matter of law. [Citation.]" (*Redevelopment Agency v. International House of Pancakes, Inc*. (1992) 9 Cal.App.4th 1343, 1348.)

"Whether a tort was committed within the scope of employment is generally a question of fact. [Citation.] But when the material facts are undisputed and no conflicting inferences are possible, as here, the question becomes one of law for our independent consideration." (*Bailey v. Filco, Inc*. (1996) 48 Cal.App.4th 1552, 1558 (*Bailey*); see also *Halliburton Energy Services, Inc. v. Department of Transportation* (2013) 220 Cal.App.4th 87, 94 (*Halliburton*); *Tryer v. Ojai Valley School* (1992) 9 Cal.App.4th 1476, 1480 (*Tryer*).)

### B. The Doctrine of Respondeat Superior

#### 1. General principles governing respondeat superior

"Under the theory of respondeat superior, an employer is vicariously liable for an employee's torts committed within the scope of employment. [Citations.] This theory is justified as '"a deliberate allocation of a risk. The losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business."' [Citations.] The employer is liable not because the employer has control over the employee or is in some way at fault, but because the employer's enterprise creates inevitable risks as a part of doing business. [Citations.] Under this theory, an employer is liable for 'the risks inherent in or created by the enterprise.' [Citation.]" (*Bailey, supra*, 48 Cal.App.4th at p. 1558.)

"[F]or respondeat superior liability to attach there must be 'a nexus between the employee's tort and the employment to ensure that liability is properly placed upon the employer.' [Citation.]" (*Halliburton, supra,* 220 Cal.App.4th at p. 95.) "'The nexus required for respondeat superior liability -- that the tort be engendered by or arise from

4

the work -- is to be distinguished from "but for" causation.  That the employment brought tortfeasor and victim together in time and place is not enough.  [Our courts] have used varied language to describe the nature of the required additional link . . .: the incident leading to injury must be an "outgrowth" of the employment . . .; the risk of tortious injury must be "'inherent in the working environment'" . . . or "'typical of or broadly incidental to the enterprise [the employer] has undertaken.'" . . .'  [Citation.)  Yet another way to describe the necessary linkage is the employee's tort must be 'foreseeable *in light of [the employee's] duties*.'  [Citation.]"  (*Bailey, supra*, 48 Cal.App.4th at p. 1558 [italics in original].)

### 2. *Special rules governing break periods and commute travel*

Applying the principles above, our courts have held that an employer is generally not liable for negligent acts its employees commit while traveling outside the office during break periods:  "It is well settled . . . that an employee, while taking time away from his work for meals, is not in the service of his employer and that the latter therefore is not responsible for negligence of the employee during such periods of absence from work."  (*Peccolo v. City of Los Angeles* (1937) 8 Cal.2d 532, 539.)  As "a general rule, . . . when an employee travels to and from lunch in the employee's own car and is not engaged in furthering any end of the employer, the employee is not acting within the scope of employment."  (*Bailey, supra*, 48 Cal.App.4th at p. 1566; *Halliburton, supra*, 220 Cal.App.4th at p. 95; *Tryer, supra*, 9 Cal.App.4th at pp. 1482-1483; *Gipson v. Davis Realty Co*. (1963) 215 Cal.App.2d 190, 209-210 ["it is the general rule that an employee on his way to lunch, even though he is driving an automobile which is the property of the master, is not engaged in furthering any end of the employer, and that therefore under such circumstances, the servant is not acting within the scope of his employment"].)

This "'lunch break' rule" (*Tryer, supra*, 9 Cal.App.4th at p. 1482) has been extended to travel for personal errands conducted during other types of break periods. For example, in *Bailey, supra*, 48 Cal.App.4th 1552, the court held that an employee was not acting within the scope of her duties when she traveled to a store to purchase cookies

5

while "on her morning break." (*Id*. at p. 1564.) The court reasoned that there was no nexus between the employee's duties as a sales cashier and her decision to "le[ave] the premises to buy cookies during her break, when she was essentially on her own time." (*Id*. at p. 1565.) The court found "guidance" in "[c]ases involving lunch time travel," noting that while "there are differences between a lunch period and a mere break, . . . the employment nexus is similar in both the lunch and break contexts when the employee uses his or her own car to travel during these periods [for personal errands]." (*Id*. at pp. 1566-1567.)

Our courts have similarly held that an employee's commute "to and from work is ordinarily considered outside the scope of employment so that the employer is not liable for his torts." (*Hinman v. Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 961 (*Hinman*).) "The reason for this 'going and coming' rule is that 'the employment relationship is "suspended" from the time the employee leaves until he returns [citation], or that in commuting he is not rendering service to his employer [Citation].' [Citation.]" (*Tryer, supra*, 9 Cal.App.4th at p. 1481 [citing and quoting *Hinman, supra*, 2 Cal.3d at p. 961.) There are, however, several "exceptions to the rule." (*Hinman, supra*, 2 Cal.3d at p. 962.)

One exception "'arises where the use of the [employee's] car gives some incidental benefit to the employer. . . . [T]he key inquiry is whether there is an incidental benefit derived by the employer. [Citation.]' [Citation.] This exception to the going and coming rule . . . has been referred to as the 'required-vehicle' exception. [Citation.] The exception can apply if the use of a personally owned vehicle is either an express or implied condition of employment [citation], or if the employee has agreed, expressly or implicitly, to make the vehicle available as an accommodation to the employer and the employer has 'reasonably come to rely upon its use and [to] expect the employee to make the vehicle available on a regular basis while still not requiring it as a condition of employment.' [Citation.]" (*Lobo v. Tamco* (2010) 182 Cal.App.4th 297, 301; see also *Hinman, supra*, 2 Cal.3d at p. 962 [recognizing the required-vehicle exception].)

6

The theory underlying the required vehicle exception is that "ordinary members of [an employer's] work force would not be required to use their vehicles in company business and would not, therefore, be required to drive their vehicles to and from work. The means by which they travel to and from work is a matter of complete indifference to [the employer]." (*Huntsinger v. Glass Containers Corp.* (1972) 22 Cal.App.3d 803, 810 (*Huntsinger*).) In contrast, when an employer requires an employee to have a personal vehicle available at work, the employee's commute to and from the workplace in that vehicle is "incidentally beneficial to [the employer] in a manner not common to commute trips by ordinary members of its work force. In other words, when a business enterprise requires an employee to drive to and from its office in order to have his vehicle available for company business during the day, accidents on the way to or from the office are statistically certain to occur eventually, and, the business enterprise having required the driving to and from work, the risk of such accidents are risks incident to the business enterprise." (*Ibid*.)

The exception normally applies to "the employee's commute directly between work and home" and to "[m]inor deviations from a direct commute." (*Halliburton, supra*, 220 Cal.App.4th at p. 97.) For example, in *Lazar v. Thermal Equipment Corp.* (1983) 148 Cal.App.3d 458, the court held the exception was applicable despite the fact that the employee had stopped at a store during his commute home. The court concluded that because the employer required the employee to use his own vehicle when commuting, the employer should be held responsible for "accidents occurring during . . . minor and foreseeable deviations" from the commute. (*Id*. at p. 466.) Similarly, in *Moradi v. Marsh USA* (2013) 219 Cal.App.4th 886, the court held the exception applied where the employee had stopped to get frozen yogurt on his drive home and had planned to attend a yoga class. Although the court acknowledged that the employee "was pursuing, at least in part, a personal objective by stopping for frozen yogurt and planning to attend a yoga class," it reasoned that "those activities did not constitute an unforeseeable, substantial departure from her commute." (*Id*. at pp. 904-905.)

7

Two additional exceptions to the "going and coming" rule apply when the employee's travel involves a business-related purpose. Under the "'special-errand exception," an employee's travel falls within the scope of employment if he or she "is not simply on his way from his home to his normal place of work or returning from said place to his home for his own purpose, but is coming from his home or returning to it on a special errand either as part of his regular duties or at a specific order or request of his employer." (*Moradi, supra*, 219 Cal.App.4th at p. 906; see also *Felix v. Asai* (1987) 192 Cal.App.3d 926, 931-932.) Similarly, under the "'dual'" or "'combined purposes'" exception, employee travel to and from work is within the scope of employment "'[w]here the [employee] is combining his own business with that of his [employer], or attending to both at substantially the same time." (*Tryer, supra*, 9 Cal.App.4th at p. 1483.)

### C. The "Required-Vehicle" Exception Does not Apply to Personal Errands Conducted During Meal Breaks

Maiello concedes that an employer is generally "not responsible for an employee's torts committed while going and coming to the work place during a break period or lunch period." He also does not dispute that the accident occurred while Callaway was returning from a personal errand (a doctor's appointment) conducted during her lunch break. He argues, however, that because Callaway regularly used her vehicle for an employment-related purpose—making bank deposits during her commute home—all of her vehicular travel to and from the office fell within the scope of her duties, including travel to and from personal errands during break periods.[2]

LA Digital does not challenge Maiello's assertion that Callaway's use of her vehicle to deposit business checks is sufficient to trigger the "required-vehicle" exception. LA Digital argues, however, that the exception merely brings an employee's commute to and from the workplace within the scope of employment; it does not extend

---

[2] Deborah Callaway, acting as amicus curiae, raises essentially identical arguments in her amicus brief.

8

to travel during a break period for a purely personal errand.  We agree that the "required-vehicle" exception does not apply under the circumstances presented here.

Maiello has failed to cite any decision that has applied the "required-vehicle" exception to employee travel to and from the office during a break period.  Rather, our courts have "only" applied the exception in cases involving "the employee's commute to and from work."  (*Halliburton, supra*, 220 Cal.App.4th at p. 105; *Felix, supra*, 192 Cal.App.3d at p. 932 ["If an employer requires an employee to furnish a vehicle as an express or implied condition of employment, the employee will be in the scope of his employment while commuting to and from the place of his employment"].)  Our courts have also emphasized that the exception is generally inapplicable if the employee was "engaged in a purely personal activity at the time of the tortious injury" (*Halliburton, supra*, 220 Cal.App.4th at p. 97) or "if the employee's entire trip serve[d] only his or her own personal purposes."  (*Id*. at p. 102.)  In this case, Callaway was not commuting from her home when the accident occurred.  Instead, she was engaged in a purely personal activity (attending a doctor's appointment during a lunch break) that served her interests alone.

The rationale underlying the "required-vehicle" exception is inapplicable to employee travel conducted for personal reasons during a break period.  As explained above, the exception is predicated on the theory that while employers are generally "indifferen[t]" to the means their employees use to travel to work, an employer that requires (or induces) its employees to commute in their own vehicles is properly assigned the risks associated with that particular form of transit.  (See *Huntsinger, supra,* 22 Cal.App.3d at p. 810; see also *Hinojosa v. Workmen's Comp. Appeals Bd.* (1972) 8 Cal.3d 150, 157 [explaining basis for required-vehicle exception in context of workers' compensation ].)  Here, LA Digital did not require or induce Callaway to attend the medical appointment during her break period nor did it influence the means by which she chose to travel to the appointment.  There is simply no logical reason why the

9

"required-vehicle" exception should apply where the employer did not cause the employee's travel nor influence the employee's mode of travel.**3**

Extending the scope of employment to include travel to and from personal errands during a break period would also be inconsistent with the broader principles underlying respondeat superior. For employer liability to attach, there must generally be some "nexus" between the employee's "activities at the time of the accident" and the employer's "business enterprise." (*Halliburton, supra*, 105.) In other words, the "employee's tort must be 'foreseeable *in light of [the employee's] duties*.' [Citation.]" (*Bailey, supra*, 48 Cal.App.4th at p. 1560 [italics in original].) This "nexus" requirement is intended to "ensure that liability is properly placed upon the employer.' [Citation.]" (*Halliburton, supra,* 220 Cal.App.4th at p. 95.) Here, there is no connection between Callaway's activities at the time of the accident—driving back from a personal errand during a permitted break period—and LA Digital's business enterprise. Nor did her job duties make it foreseeable she would commit a tort while pursuing her own interests during a break period. There is simply no basis to impose vicarious liability where the employee's "entire trip serves only his or her own personal purposes." (*Id*. at p. 102.)**4**

---

**3**     Maiello argues that "[b]y driving a required vehicle to [LA Digital's] offices following her doctor's appointment, a jury could find that Callaway was [benefitting] her employer . . . by bringing the vehicle back to the office for [LA Digital's subsequent use and benefit]." This argument ignores that LA Digital did not cause Callaway to take her vehicle from the workplace to the doctor's appointment, which had no relation to her duties at LA Digital. Based on the parties' evidence, whether and how Callaway attended her personal errand during her lunch break was a matter of total "indifference" to LA Digital. (*Huntsinger, supra*, 22 Cal.App.3d at p. 810 [employer is not liable for torts committed during employee's commute when "[t]he means by which [the employee] travel[s] to and from work is a matter of complete indifference to [the employer"].)

**4**     Maiello argues for the first time on appeal that there is a triable issue of material fact whether the "dual" or "combined purpose" exception to the "going and coming" rule applies here. According to Maiello, a jury could reasonably infer that, when returning from her personal errand, Callaway was "combining her own business (returning from a doctor's appointment) with that of [LA Digital] (driving a required vehicle to [LA

10

**DISPOSITION**

The judgment is affirmed.  The respondent shall recover its costs on appeal.

ZELON, J.

We concur:

PERLUSS, P. J.

FEUER, J.*

---

Digital's workplace for its use and benefit)."  Maiello did not raise this argument in the trial court.  Indeed, his trial court memorandum opposing LA Digital's motion for summary judgment does not even reference the dual purpose exception.  He has therefore forfeited the argument on appeal.  (*Gray1 CPB, LLC v. SCC Acquisitions, Inc.* (2015) 233 Cal.App.4th 882, 897.  ["""""[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court.' Thus, 'we ignore arguments, authority and facts not presented and litigated in the trial court. Generally, issues raised for the first time on appeal which were not litigated in the trial court are [forfeited].  [Citations.]'"" [Citation.]" [Citation.]' [Citation.]"].)

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.