Filed 4/18/17 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MICHAEL J. SUMRALL et al., | |
| Plaintiffs and Appellants, | G052678 |
| v. | (Super. Ct. No. 30-2012-00571554) |
| MODERN ALLOYS, INC., | ORDER MODIFYING OPINION; NO CHANGE IN JUDGMENT |
| Defendant and Respondent. | |

This court hereby orders that the opinion filed herein on April 13, 2017, be modified as follows:

1. On page 1, second paragraph the name "Waylie" is deleted and replaced with "Wylie" so the paragraph reads:

"Law Offices of William J. Kopeny and William J. Kopeny; Aitken, Aitken, Cohn, Wylie A. Aitken and Megan G. Demshki; Hunt & Adams and John C. Adams for Plaintiffs and Appellants."

2. On page 7, second sentence of the first full paragraph, the word "cannot" is deleted and replaced with "can" so the sentence reads:

"Thus, the question of whether Campos was engaged in a business errand—and was therefore acting within the scope of his employment—is not a question of law that can be resolved in a motion for summary judgment."

This modification does not change the judgment.

MOORE, ACTING P. J.

WE CONCUR:

ARONSON, J.

THOMPSON, J.

Filed 4/13/17 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MICHAEL J. SUMRALL et al., | |
| Plaintiffs and Appellants, | G052678 |
| v. | (Super. Ct. No. 30-2012-00571554) |
| MODERN ALLOYS, INC., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, John C. Gastelum, Judge.  Reversed.

Law Offices of William J. Kopeny and William J. Kopeny; Aitken, Aitken, Cohn, Waylie A. Aitken and Megan G. Demshki; Hunt & Adams and John C. Adams for Plaintiffs and Appellants.

Wait & Hufnagel, Thomas B. Wait, Robert A. Hufnagel and Danica Y. Chang for Defendant and Respondent.

\*          \*          \*

# I

# INTRODUCTION

"In general, an employee is not acting within the scope of employment while travelling to and from *the workplace*. But if the employee, *while commuting*, is on an errand for the employer, then the employee's conduct is within the scope of his or her employment from the time the employee starts on the errand . . . ." (CACI No. 3724 [The Going-and-Coming Rule—Business Errand Exception], italics added; *Jeewarat v. Warner Bros. Entertainment Inc*. (2009) 177 Cal.App.4th 427, 435-436 (*Jeewarat*).)

Here, a construction company paid its employee only for the hours he worked at a jobsite. But rather than driving his vehicle directly from his home to the jobsite, the company expected the employee to first commute to the company's "yard." The employee would then drive a company truck from the yard to the jobsite, transporting coworkers and materials. One day, while driving from his home to the yard, the employee collided with a motorcyclist, who sued the construction company. The trial court granted defendant summary judgment, finding that the employee was commuting to his "work," and therefore he was not acting within the scope of his employment.

However, there is a material, triable issue: the location of the "workplace." If the yard is the employee's "workplace," then he apparently was on an ordinary commute and he was not acting within the scope of his employment. In this lawsuit, defendant infers from the undisputed facts that its yard is the employee's "workplace," even though it paid its employee only from the time he arrived at the jobsite. But if the employee's jobsite is his "workplace," as plaintiff infers, then the employee was arguably on a business errand to the yard for the employer's benefit, and that business errand would have started when the employee left his home.

We cannot state as a matter of law that the employee was not on a business errand while commuting from his home to the employer's yard. Thus, we will reverse the trial court's granting of defendant's summary judgment motion.

2

## II

## FACTUAL AND PROCEDURAL BACKGROUND

In October 2010, Modern Alloys Inc. (Modern Alloys) employed Juan Campos as a cement/mason finisher. Campos' job duties entailed setting forms, placing concrete, and smoothing it out once it set. Campos received an hourly wage for an eight-hour shift, which began and ended at the jobsite where he performed his work. Modern Alloys had a contract to install a new center median at a jobsite on the 710 freeway.

Modern Alloys' yard is located in the City of Stanton. Modern Alloys expected Campos to first arrive at its yard at about 8:00 p.m., before working at the jobsite from 9:00 p.m. to 5:00 a.m. Crews from Modern Alloys would drive from the yard to the jobsite in company vehicles. Once Campos arrived at the yard, he would drive one of the company's vehicles, a two-ton dump truck, from the yard to the jobsite and then return it to the yard at the end of his shift. Campos would take his coworkers along in the company's truck, which was also loaded with construction materials.

On October 7, at about 7:30 p.m., Campos was driving from his home to the yard in his own vehicle. Campos collided with Michael Sumrall, who was riding a motorcycle. The collision occurred on the street outside of the parking lot at the Modern Alloys yard.

Sumrall filed a complaint against Modern Alloys alleging respondeat superior liability for Campos' negligence; Sumrall's spouse alleged loss of consortium. Modern Alloys filed a motion for summary judgment, claiming Campos was not acting within the scope of his employment under the "going and coming" rule. Sumrall filed an opposition claiming that Modern Alloy was liable under the "business errand" exception. The trial court granted Modern Alloys' summary judgment motion and entered a final judgment.

3

# III

# DISCUSSION

The legal principles involved in motions for summary judgment are well established. The moving party bears the initial burden to make a prima facie showing that no triable issue of material fact exists. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) If this burden is met, the party opposing the motion bears the burden of showing the existence of disputed facts. (*Ibid.*) Courts "'construe the moving party's affidavits strictly, construe the opponent's affidavits liberally, and resolve doubts about the propriety of granting the motion in favor of the party opposing it.'" (*Seo v. All-Makes Overhead Doors* (2002) 97 Cal.App.4th 1193, 1201-1202.) We review the trial court's decision de novo. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65, 67-68.)

"In determining if the papers show that there is no triable issue as to any material fact, the court shall consider all of the evidence set forth in the papers . . . and all *inferences* reasonably deducible from the evidence, . . . summary judgment shall not be granted by the court based on *inferences* reasonably deducible from the evidence if contradicted by other *inferences* or evidence that raise a triable issue as to any material fact." (Code Civ. Proc., § 437c, subd. (c), italics added.)

Here, it is undisputed that Campos was driving his own vehicle from his home to the Modern Alloys yard at the time of the collision. Thus, there is a reasonable inference that Campos was on a normal commute. However, it is also undisputed that Campos transported Modern Alloys' vehicle, workers, and materials from its yard to the jobsite, and that Modern Alloys did not pay Campos until he reached the jobsite. Thus, there is a reasonable inference that Campos was also on a business errand for Modern Alloys' benefit while commuting from his home to the yard.

Because we can draw two reasonable inferences from these undisputed facts, we cannot affirm the trial court's grant of summary judgment.

4

*A. The scope of employment under the respondeat superior doctrine is broad.*

Individuals are usually held legally accountable for their own actions; the negligence of one person is generally not imputed to another. Vicarious liability is the exception and it is imposed for public policy reasons. (See, e.g., Civil Code, § 1714.1 [parents are held vicariously liable for the actions of their children]; Pub. Util. Code, § 21404 [owners of aircraft are held vicariously liable for the actions of their operators].)

The doctrine of respondeat superior imposes vicarious liability on employers for the actions of their employees while acting within the scope of their employment. (*Jeewarat*, *supra*, 177 Cal.App.4th at p. 435.) The public policy supporting this doctrine is based on "'a deliberate allocation of a risk. The losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business. . . .'" (*Hinman v. Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 959-960 (*Hinman*).) Thus, the respondeat superior doctrine: (1) encourages accident prevention; (2) generally means that an innocent person who has been injured by an employee's tortuous conduct will be more likely to collect damages; and (3) encourages employers to protect against that risk by obtaining insurance and spreading those costs over the entire business and ultimately to its customers. (*Ibid.*)

"In California, the scope of employment has been interpreted broadly under the respondeat superior doctrine. For example, '[t]he fact that an employee is not engaged in the ultimate object of his employment at the time of his wrongful act does not preclude attribution of liability to an employer.' [Citation.] . . . Moreover, "'where the employee is combining his own business with that of his employer, or attending to both at substantially the same time, no nice inquiry will be made as to which business he was actually engaged in at the time of injury, unless it clearly appears that neither directly *nor indirectly* could he have been serving his employer."'" (*Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1004, italics added.)

5

*B. Whether an employee is on a business errand for the benefit of his or her employer is usually a question of fact for the jury.*

Generally, under the going and coming rule, an employee going to or coming home from work is "ordinarily considered outside the scope of employment so that the employer is not liable for his torts." (*Hinman*, *supra*, 2 Cal.3d at p. 961.) "The 'going and coming' rule is sometimes ascribed to the theory that the employment relationship is 'suspended' from the time the employee leaves until he returns [citation], or that in commuting he is not rendering service to his employer [citation]." (*Ibid.*)

An exception to the going and coming rule occurs when an employee commits a negligent act while engaged in a "special errand" or a "business errand" for the benefit of his or her employer while commuting.[1] (*Ducey v. Argo Sales Co.* (1979) 25 Cal.3d 707, 722; CACI No. 3724.) "If the employee is not simply on his way from his home to his *normal place of work* or returning from said place to his home for his own purpose, but is coming from his home or returning to it on a special errand either as part of his regular duties or at a specific order or request of his employer, the employee is considered to be in the scope of his employment from the time that he starts on the errand until he has returned or until he deviates therefrom for personal reasons." (*Boynton*, *supra*, 139 Cal.App.2d at p. 789, italics added [employee attended social function after work where his attendance was expected and it benefitted the employer].)

Whether an employee is on a business errand is usually a question of "fact for the jury. All of the relevant circumstances must be considered and weighed in relation to one another." (*Trejo v. Maciel* (1966) 239 Cal.App.2d 487, 494.) "Generally, whether an employee is within the scope of employment is a question of fact; however,

---

[1] The term "special errand" is something of a misnomer because it implies that the employer must make a specific request for a particular errand. However, the "special errand" can also be part of the employee's regular duties. (*Boynton v. McKales* (1956) 139 Cal.App.2d 777, 789 (*Boynton*).) Thus, we have chosen to use the term "business errand" throughout this opinion, as it is more precise and descriptive.

when the facts of a case are undisputed and *conflicting inferences may not be drawn* from those facts, whether an employee is acting within the scope of employment is a question of law." (*Blackman v. Great American First Savings Bank* (1991) 233 Cal.App.3d 598, 602 (*Blackman*), italics added.)

Here, as we noted earlier, there are conflicting inferences that a reasonable fact finder could draw from the undisputed facts. Thus, the question of whether Campos was engaged in a business errand—and was therefore acting within the scope of his employment—is not a question of law that cannot be resolved in a motion for summary judgment. A jury must consider and weigh all of the relevant circumstances.

*C.  A jury could reasonably find that Campos' commute incidentally benefitted Modern Alloys and was not common to ordinary members of the workforce.*

The business errand exception "will be made to the 'going and coming' rule where the trip involves an incidental benefit to the employer, not common to commute trips by ordinary members of the work force."[2] (*Hinman*, *supra*, 2 Cal.3d at p. 962.) Again, the jury's instruction on the business errand exception explains it concisely:  "In general, an employee is not acting within the scope of employment while travelling to and from *the workplace*.  But if the employee, *while commuting*, is on an errand for the employer, then the employee's conduct is within the scope of his or her employment from the time the employee starts on the errand . . . ."  (CACI No. 3724 [The Going-and-Coming Rule—Business Errand Exception], italics added.)

---

[2] The trial court noted in its summary judgment ruling that the entire "work force" at Modern Alloys purportedly assembled each day at the yard before heading to the jobsite, citing this same quote from *Hinman*.  The court apparently reasoned that Campos' commute was therefore "common" to other members of Modern Alloy's "work force."  However, we interpret that the Supreme Court in *Hinman* intended that a trier of fact should consider the broader "work force."  That is, the operative question for a jury in this case would be whether Campos' commute was common as compared to ordinary members of the public, not as compared to other Modern Alloys employees.

Modern Alloys argues that: "Whether or not a jury could have discovered some hypothesis to find that Mr. Campos was acting within the scope of his employment is irrelevant." (Original bolding and capitalization omitted.) We disagree. The possibility that a jury could reasonably "discover" that Campos may have been on a business errand at the time of the collision is precisely why this matter cannot be properly resolved in a motion for summary judgment.

Here, a jury may need to resolve several questions in order to determine if Campos was on a business errand. Was the "workplace" the yard where Campos first arrived, or was it the jobsite where he applied his skills as a concrete worker and was paid for that work? Was it an incidental benefit for Modern Alloys to have Campos—a masonry worker—first arrive at the yard and drive material and coworkers in a two-ton truck to a jobsite without being paid? Is it common for a commuter to drive from his home to a location where he will not be paid for his work, rather than to drive directly to the jobsite where the employer will pay him for his work? Would Campos have driven directly from his home to the jobsite if not expected to do otherwise?

In granting Modern Alloys' summary judgment motion, the trial court determined that "case law" does not support a conclusion that Campos may have been on a business errand at the time of the collision. While we (and apparently the parties) could not find any published opinions that closely resemble the facts in this case, we respectfully disagree.[3] Indeed, virtually all of tort law is a creature of case law (including

[3] The published opinions we have reviewed in this area of the law are all readily distinguishable on their facts. Since each "business errand" question necessarily presents a unique, fact-intensive inquiry, these resources have not been particularly helpful to our analysis. (See, e.g., *Blackman*, *supra*, 233 Cal.App.3d at p. 601 [no business errand while employee drove to school after work]; *Tognazzini v. San Luis Costal Unified School Dist.* (2001) 86 Cal.App.4th 1053, 1058 [no business errand while employee drove on day off]; *Felix v. Asai* (1987) 192 Cal.App.3d 926, 929-930 [no business errand while employee drove on detour to parent's home]; *Harvey v. D & L Constr. Co.* (1967) 251 Cal.App.2d 48, 49 [possible business errand while employee was providing another employee a ride home from an out-of-state worksite].)

the coming and going rule and the business errand exception).  "'[T]he law of torts is anything but static, and the limits of its development are never set.  When it becomes clear that the plaintiff's interests are entitled to legal protection against the conduct of the defendant, the mere fact that the claim is novel will not of itself operate as a bar to the remedy.'"  (*Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1050, citing Prosser & Keeton, Torts (5th ed. 1984) § 1, p. 4, fn. omitted.)

Finally, we note that the public policy objectives of the respondeat superior doctrine support a finding that vicariously liability may attach to Modern Alloys under these facts.  If Modern Alloys had actually paid Campos from the time he arrived at its yard, then it arguably would not be reasonable to hold the company liable for any of Campos' torts before he got there.  That would not be a foreseeable cost of Modern Alloy's business.  However, the expenses involved in hauling vehicles, equipment, and workers from its yard to a jobsite are most definitely a foreseeable cost of Modern Alloy's construction business.  Yet Campos performs at least some of those hauling duties at no additional cost to Modern Alloys, and it accomplishes those savings by directing Campos to first drive from his home to its yard.  Therefore, Modern Alloys has arguably assumed the "allocation of a risk" under the respondeat superior doctrine, and the business errand exception to the going and coming rule may reasonably apply.  (See *Hinman*, *supra*, 2 Cal.3d at pp. 959-960.)

In sum, this case presents a decision for a jury to make under its unique facts and circumstances.  We simply cannot state as a matter of law that Campos was not on a business errand for the benefit of Modern Alloys at the time of the collision.

IV

DISPOSITION

The judgment is reversed.  Costs on appeal are awarded to appellants.


MOORE, ACTING P. J.


WE CONCUR:


ARONSON, J.


THOMPSON, J.