Filed 10/17/23  Schweissinger v. Crown Dodge CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| DONNA SCHWEISSINGER et al.,<br><br>  Plaintiffs and Respondents,<br><br>v.<br><br>CROWN DODGE et al.,<br><br>  Defendants and Appellants. | 2d Civil No. B326690<br>(Super. Ct. No. 56-2019-00524183-CU-PA-VTA)<br>(Ventura County) |

Crown Dodge (Dodge) appeals from the judgment after a jury trial and an order denying Dodge's motion for judgment notwithstanding the verdict.  The jury found in favor of plaintiffs, Donna Schweissinger and her children, in a wrongful death lawsuit against the driver in a fatal car accident and the driver's employer, Dodge.  On appeal, Dodge contends the evidence was insufficient to support the jury's finding that the driver was in the scope of his employment at the time of the car accident.  We affirm.

## FACTUAL AND PROCEDURAL HISTORY

Aaron Lane was an internet sales manager at Dodge. His job required him to contact customers to get them into the dealership to purchase cars. He did his job "anywhere and at any time." Lane's income was based fully on commission.

Lane testified that selling cars and meeting clients to close a sale were a part of his regular duties. Dodge trained him to see a sale through to the end, which included meeting a customer at the dealership to close a sale. Dodge trained its salespeople: "one vehicle, one salesman, one customer." The president of Dodge testified that whenever possible, the dealership preferred one salesperson to handle an entire deal.

In June 2018, Lane was at the beach on his day off from work when he received a call from a coworker. The coworker told Lane that one of his customers was in the dealership to close a sale. The coworker asked if Lane wanted to close the deal himself or if he wanted another salesperson to handle it. If Lane went to the dealership himself, he would earn full commission on the sale. If another salesperson handled the sale, Lane would have to split half of the commission with that salesperson.

Lane told his coworker that he would handle the sale and immediately left the beach to go to the dealership. On his way to the dealership, Lane struck and killed Jeffery Schweissinger.

Plaintiffs, the surviving heirs, sued Lane and Dodge for negligence-wrongful death and a "survival action." They alleged Lane was acting in the scope of his employment at the time of the accident.

At trial, the parties stipulated Lane was negligent and caused decedent's death. The sole liability question remaining for the jury was whether Lane was acting in the scope of his

employment for Dodge at the time of the collision. Lane, several Dodge employees, and the president of Dodge testified regarding the company's policies, its expectations for its salespeople, and the job duties of its salespeople. At the conclusion of trial, the jury found that Lane was acting in the scope of his employment for Dodge. Judgment was entered in favor of the plaintiffs.

Dodge filed a motion for judgment notwithstanding the verdict, arguing that the evidence was insufficient as a matter of law to support the jury's verdict. The trial court denied the motion.

## DISCUSSION

Dodge contends there was no substantial evidence to support the jury's finding that Lane was acting in the scope of his employment at the time of the collision. We disagree.

We review the jury's finding for substantial evidence. We read the record in the light most favorable to the plaintiffs. We accept as true all evidence and reasonable inferences in support of the jury's verdict and resolve every conflict in favor of the judgment. (*Stubblefield Construction Co. v. City of San Bernardino* (1995) 32 Cal.App.4th 687, 703 [applying substantial evidence review to a denial of a motion for judgment notwithstanding the verdict]; *Mendoza v. Western Medical Center Santa Ana* (2014) 222 Cal.App.4th 1334, 1343.)

The sole liability question before the jury was whether Lane acted within the scope of his employment at the time of the collision. Conduct is within the scope of employment if it is "reasonably related to the kind of tasks that the [employee] was employed to perform" or if it is "reasonably foreseeable in light of the employer's business or the [employee's job] responsibilities." (CACI No. 3720.) Scope of employment "has been interpreted

3

broadly under the respondeat superior doctrine in California. [Citation.] . . . The employer's liability extends to risks inherent in or incidental to the employer's enterprise. [Citation.]" (*Morales-Simental v. Genentech, Inc.* (2017) 16 Cal.App.5th 445, 452 (*Morales*).)

An exception to the respondeat superior doctrine is the "going-and-coming rule." "Generally, an employee is outside the scope of his employment while engaged in his ordinary commute to and from his place of work." (*Felix v. Asai* (1987) 192 Cal.App.3d 926, 931 (*Felix*).) The going-and-coming rule is "based on the theory that the employment relationship is suspended from the time the employee leaves his job until he returns and on the theory that during the normal everyday commute, the employee is not rendering services directly or indirectly to his employer." (*Ibid.*)

An exception to the going-and-coming rule is the "special errand rule." "If the employee is not simply on his way from his home to his normal place of work or returning from said place to his home for his own purpose, but is coming from his home or returning to it on a special errand either as part of his regular duties or at a specific order or request of his employer, the employee is considered to be in the scope of his employment from the time that he starts on the errand until he has returned or until he deviates therefrom for personal reasons. [Citations.]" (*Boynton v. McKales* (1956) 139 Cal.App.2d 777, 789 (*Boynton*).) The errand must be performed as either (1) part of the employee's regular duties, or (2) at the specific request or expectation of the employer. (*Ibid.*; *Morales*, *supra*, 16 Cal.App.5th at pp. 452-454.) It is not necessary for the employee to be directly engaged in

4

their job duties; included are errands that incidentally or indirectly benefit the employer. (*Morales*, at pp. 452-453.)

Substantial evidence supports a finding that Lane was acting in the scope of his employment at the time of the collision. Plaintiffs presented evidence that Lane's drive to the dealership on the day of the collision was not his ordinary commute to work, but rather a commute to perform a special task benefiting Dodge. The special errand rule "may be applicable to the employee who is called to work to perform a special task for the employer at an irregular time." (*Felix*, *supra*, 192 Cal.App.3d at p. 932.) Lane was on his day off from work and at the beach when he received a call from his coworker. He testified that he would not have driven to the dealership on that day if he had not received the phone call. He testified that he was on a "special trip" to the dealership to meet his customer and that prior to that day, he had never driven from the beach to the dealership. This evidence showed that Lane's commute into work at the time of the collision was "not simply on his way from his home to his normal place of work . . . for his own purpose." (*Boynton*, *supra*, 139 Cal.App.2d at p. 789.) But instead, Lane drove to the dealership while performing a special errand in service of his employer. (Compare with *Sullivan v. Thompson* (1939) 30 Cal.App.2d 675, 677-678 [employee was within the scope of his employment at the time of a car accident where the evidence established that he was scheduled to work at one location, but was on his way to the employer's other location to meet with a customer one hour earlier than his scheduled shift].)

There is also substantial evidence that Lane was on a special errand as either a part of his regular duties or at the request of his employer. Lane testified that his regular duties

5

included "selling cars and meeting clients to close a sale" and that he performed his job "anywhere and at any time." He also testified that he would always come in on his day off when he was called. Another employee testified that it was common for a salesperson to come in on their day off to complete a sale.

Plaintiffs also presented evidence that Dodge requested or expected Lane to partake in the errand. (*Boynton*, *supra*, 139 Cal.App.2d at p. 789 [special errand rule may apply to tasks that the employer requests or at least expects the employee to perform].) Plaintiffs presented evidence that Dodge paid its salespeople through commission and bonuses. Lane's income at the dealership was based fully on commission. Dodge's policy was that in order to receive full commission, a salesperson must be at the dealership to close a sale. Otherwise, the commission would be split in half. Dodge's president also testified that the company "prefer[red] one salesperson to handle an entire deal." Dodge trained its salespeople: "one vehicle, one salesman, one customer." Thus, employees such as Lane were incentivized to complete a sale from start to finish.

Lane also testified that he went into work on the day of the collision because Dodge "trained" him to see the sale through to the end. Another employee testified that management would recognize the salesperson's "performance" when they came in to close a deal on their day off. A former employee testified that one time, Dodge's management made derogatory comments towards him during a sales meeting because he did not come in on his day off to meet with a customer. Based on this evidence, a jury could reasonably find that coming into work on a day off to complete a sale was either a part of Lane's regular duties or requested or expected by Dodge.

6

Dodge argues that the special errand rule does not apply because Lane was not required to come in on his day off to complete the sale. But a special errand need not be mandatory for the rule to apply. In *Boynton*, *supra*, 139 Cal.App.2d at p. 789, the Court of Appeal held that "attendance at a social function, although not forming part of the normal duties of the employee, may come under the 'special errand rule' if the function or the attendance was connected with the employment and for a material part intended to benefit the employer who requested or expected the employee to attend." There, the employee caused a car accident while driving back home from a banquet honoring employees who had five or more years of service. Although the employer testified the banquet was "purely social, a friendly get-together, without any compulsion to attend," the employee was invited, the employer benefited by promoting employment continuity, and employee attendance was "at least expected." (*Id.* at p. 791.)

Dodge also compares this case to *Morales*, *supra*, 16 Cal.App.5th 445, but that case is inapposite. In *Morales*, an employee struck and killed the decedent while he was driving to work on his night off. The employee claimed that he was going to work to review resumes in preparation for job interviews. (*Id.* at pp. 448-449.) The Court of Appeal upheld the order granting summary judgment in favor of the defendant employer, concluding there was no triable issue of fact as to whether the employee was acting in the scope of his employment at the time of the accident. (*Id.* at p. 448.) Notably, there was no evidence his employer requested or expected him to drive into the office that night to prepare for the interviews. (*Id.* at pp. 455, 458.) Furthermore, the plaintiffs did not present any evidence the

7

employee "had even once before made a special trip to [work] to review resumes or perform any task connected to hiring."  Thus, it could not be inferred that such trip was part of his regular duties.  (*Id.* at p. 460.)

Here, in contrast, the plaintiffs presented substantial evidence that Dodge had expected its salespeople to come into work on their day off in order to complete a sale and that Lane was performing his regular duties at the time of the collision.  Thus, we will not disturb the jury's verdict.

DISPOSITION

The judgment is affirmed.  Respondents shall recover costs on appeal.

NOT TO BE PUBLISHED.

BALTODANO, J.

We concur:

GILBERT, P. J.

CODY, J.

8

Jeffrey G. Bennett, Judge

Superior Court County of Ventura

_____

Horvitz & Levy, David M. Axelrad, Mitchell C. Tilner; Daniels, Fine, Israel, Schonbuch & Lebovits, Michael Schonbuch and Bernadette Castillo Brouses for Defendant and Appellant.

Alan Charles Dell'Ario; Chang Klein, Deborah S. Chang, Candice S. Klein, Patrick Gunning and Sarah S. Kim for Plaintiffs and Respondents.