[No. B055890. Second Dist., Div. Three. Aug. 31, 1992.]

ESTHER MILLER, Plaintiff and Respondent, v.
CECILIA P. STOUFFER, Defendant and Appellant;
MARIA BARRIENTOS, Defendant and Respondent.

COUNSEL

Nelson, Draper & Teuber, Vincent W. Heublein, Horvitz & Levy, David M. Axelrad and Christine T. Hoeffner for Defendant and Appellant.

Mazursky, Schwartz & Angelo, Charles J. Mazursky, Watkins & Stevens and Steven B. Stevens for Plaintiff and Respondent.

Musick, Peeler & Garrett, C. Donald McBride and Brian E. Shear for Defendant and Respondent.

OPINION

**KLEIN, P. J.**—Defendant and appellant Cecilia P. Stouffer (Stouffer) appeals a judgment and an order denying her motion for judgment notwithstanding the verdict (JNOV) following a jury verdict in a personal injury case in favor of plaintiff and respondent Esther Miller (Miller). (Code Civ. Proc., § 904.1, subds. (a), (d).)

The issues presented include (1) whether Stouffer's housekeeper, Maria Barrientos (Barrientos), was acting within the scope of her employment in driving Stouffer's automobile so as to make Stouffer liable for Miller's

injuries under the doctrine of respondeat superior; and (2) whether Proposition 51,[1] which eliminated joint and several liability for noneconomic damages, allows Stouffer to avoid liability for Miller's noneconomic damages.

We uphold the jury's determination Stouffer is vicariously liable because we cannot say as a matter of law Barrientos was not serving her employer at the time of the accident.

Further, because the basis of Stouffer's liability is the doctrine of respondeat superior, which imputes the employee's negligence to the employer, Stouffer's reliance on Proposition 51 is misplaced. Proposition 51 modified the doctrine of joint and several liability but did not abrogate the doctrine of respondeat superior, which imposes vicarious liability on the employer by virtue of the employer's *status*. The judgment therefore is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

In May 1984, Stouffer hired Barrientos as a live-in housekeeper. Barrientos's usual working hours were 8 a.m. to about 5 p.m., and she slept at Stouffer's home five nights per week.

Stouffer has never driven an automobile. She and her adult son Gregory co-owned a 1975 Dodge Colt. The only insurance policy covering Stouffer as a co-owner of the vehicle provided $25,000 in policy limits per injured person. Stouffer's adult daughter Lisah was authorized to drive the vehicle.

Since September 1987, Lisah had been stationed at March Air Force Base. When Lisah returned home to visit Stouffer, Lisah usually did Stouffer's grocery shopping.

On the morning of November 18, 1987, the date of the accident, Stouffer prepared a grocery list and requested Lisah to do the marketing. Lisah took Barrientos along to assist her with the grocery shopping. Lisah drove the Dodge Colt.

Lisah and Barrientos went shopping at the Giant, a supermarket, and Andre's, a deli. At the Giant, Barrientos helped Lisah select Stouffer's groceries and loaded them into the car. Next, they stopped at Andre's to buy

[1]Proposition 51 is the popular name for the Fair Responsibility Act of 1986 (Civ. Code, §§ 1431 to 1431.5), an initiative measure approved by the voters of California at the June 1986 election.

All further statutory references are to the Civil Code unless otherwise specified.

[2]The evidence is viewed in the light most favorable to the judgment. (*Gyerman* v. *United States Lines Co.* (1972) 7 Cal.3d 488, 492, fn. 1 [102 Cal.Rptr. 795, 498 P.2d 1043].)

some items for Lisah. The accident occurred about 1:30 p.m. that afternoon on the way back to Stouffer's house.

After shopping at Andre's, Lisah asked Barrientos if she would like to drive on the trip home. Barrientos had a valid learner's permit and had decided to obtain a driver's license to enable her, inter alia, to assist Stouffer with various errands that required driving.

Barrientos struck Miller, a pedestrian in a crosswalk near Andre's, seriously injuring her. Miller sustained a cerebral contusion, a subdural hematoma, brain damage, a fractured pelvis and a fractured right knee.

Miller sued Barrientos, Stouffer, Lisah and Gregory. Following an initial court trial, the judgment was reversed by stipulation as to all parties except Gregory on the ground the trial court denied defendants their right to a jury trial. The judgment against Gregory from the first trial was not challenged. Gregory was found liable under the permissive user statute (Veh. Code, §§ 17150, 17151) and faced a judgment of $15,000 in compensatory damages plus costs.

The case was retried to a jury. The jury found Barrientos liable for negligence, found Barrientos acted within the scope of her employment, and awarded Miller $174,000 in economic damages and $260,000 in noneconomic damages. Although the jury was not asked to allocate negligence to Stouffer, it did so on its own by writing in her name and assigning her 40 percent of the fault. The jury also assigned 60 percent of the fault to Barrientos and 0 percent to Lisah. It further found Lisah was Stouffer's agent at the time of the accident.

Following the verdict, the trial court directed Miller's counsel to prepare the judgment. Miller's counsel filed a motion for JNOV to modify the verdict to allocate 100 percent of the fault to Barrientos and to find Stouffer vicariously liable for Barrientos's entire liability. The trial court granted Miller's motion.

Stouffer appealed from the resulting judgment and from the order denying her motion for JNOV.

## CONTENTIONS

Stouffer contends: (1) respondeat superior liability cannot be imposed upon her because (a) she was not running a business enterprise, (b) the going and coming rule precludes liability because Barrientos was driving to her

work location at the time of the accident, (c) the special errand rule does not apply, (d) there was no benefit from Barrientos's accompanying Lisah substantial enough to justify finding Stouffer liable, and (e) the purpose of the doctrine would not be served by holding her liable; (2) Proposition 51 limits liability for noneconomic damages to a defendant's percentage of fault, and because Stouffer was found to be only vicariously liable, she was not at fault for the accident and cannot be held liable for noneconomic damages; and (3) the verdict is hopelessly ambiguous and Stouffer therefore is entitled to a new trial.

Stouffer does not challenge the sufficiency of the evidence to support the damage award.

## DISCUSSION

1. *Substantial evidence supports the determination Barrientos was acting within the scope of her employment so as to give rise to respondeat superior liability.*

a. *General principles underlying employer's vicarious liability.*

██ "Under the doctrine of respondeat superior, an employer may be held vicariously liable for torts committed by an employee within the scope of employment. [Citation.] . . . The doctrine is a departure from the general tort principle that liability is based on fault. [Citation.] It is a rule of policy, a deliberate allocation of a risk. [Citations.] Respondeat superior is based on a deeply rooted sentiment that it would be unjust for an enterprise to disclaim responsibility for injuries occurring in the course of its characteristic activities. [Citations.]" (*Mary M.* v. *City of Los Angeles* (1991) 54 Cal.3d 202, 208-209 [285 Cal.Rptr. 99, 814 P.2d 1341], internal quotation marks omitted.)[3]

Three reasons have been given for applying the doctrine of respondeat superior: "(1) to prevent recurrence of the tortious conduct; (2) to give greater assurance of compensation for the victim; and (3) to ensure that the victim's losses will be equitably borne by those who benefit from the enterprise that gave rise to the injury. [Citations.]" (*Mary M., supra,* 54 Cal.3d at p. 209.)

Our Supreme Court has observed in some respects, "the rationale underlying respondeat superior is similar to that underlying the Workers' Compensation Act. Both fields of law allow recovery for the injured party irrespective of proof of the employer's fault. Both are concerned with the allocation

---

[3]In *Mary M.,* our Supreme Court recently held an employer may be held liable under the doctrine of respondeat superior when a police officer on duty, by misusing his official authority, rapes a woman whom he has detained. (*Mary M., supra,* 54 Cal.3d at p. 207.)

of the cost of industrial injury. [Citation.] [footnote omitted.] 'The proper test [for respondeat superior] bears far more resemblance to that which limits liability for workers' compensation than to the test for negligence. The employer should be held to expect risks, to the public also, which arise "out of and in the course of" his employment of labor.' [Citation.] Thus, under California law, an employer is liable for risks 'arising out of the employment.' [Citations.]" (*Perez* v. *Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 967-968 [227 Cal.Rptr. 106, 719 P.2d 676].)

■ For the doctrine of respondeat superior to apply, the plaintiff must prove the employee's tortious conduct was committed within the scope of the employment. (*Mary M.*, *supra*, 54 Cal.3d at p. 209.) "A risk arises out of the employment when in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business. [Citations.] In other words, where the question is one of vicarious liability, the inquiry should be whether the risk was one that may fairly be regarded as typical of or broadly incidental to the enterprise undertaken by the employer." (*Ibid.*, internal quotation marks omitted.)

Whether an employee was acting within the scope of the employment is a question of fact for the jury, unless the facts are undisputed and no conflicting inferences are possible, in which case the issue becomes one of law. (*Perez, supra*, 41 Cal.3d at p. 968.)

In determining whether the employee was acting within the scope of the employment, factors to be considered include the intent of the employee, the nature, time and place of his or her conduct, the employee's actual or implied authority, the work the employee was hired to do, the incidental acts the employer reasonably should have expected would be done, and the amount of freedom allowed the employee in performing his or her duties. (*Loper* v. *Morrison* (1944) 23 Cal.2d 600, 605-606 [145 P.2d 1].)

■ An employer's liability is not necessarily terminated by reason of the fact the employee combined a private purpose with the business of the employer. It is established " 'that where the servant is combining his own business with that of his master, or attending to both at substantially the same time, no nice inquiry will be made as to which business the servant was actually engaged in when a third person was injured; but the master will be held responsible, unless it clearly appears that the servant could not have been directly or indirectly serving his master.' " (*Loper* v. *Morrison, supra*, 23 Cal.2d at p. 606; accord *Lockheed Aircraft Corp.* v. *Ind. Acc. Com.* (1946) 28 Cal.2d 756, 758-759 [172 P.2d 1].)

### b. *Record supports application of doctrine of respondeat superior.*

Stouffer does not contend the jury was not correctly instructed regarding the doctrine of respondeat superior. Rather, she attacks the jury's factual determination of that issue.

 Stouffer contends Barrientos's practice driving cannot be viewed as anything other than a substantial deviation from her duties as a maid in Stouffer's household. Stouffer emphasizes Barrientos did not have a driver's license, Stouffer did not request Barrientos to drive, and Barrientos had no responsibility to drive on errands for Stouffer. Also, Stouffer had not asked Barrientos to run any errands outside the house; Stouffer lacked knowledge of Barrientos's accompanying Lisah or practicing her driving; and, at the time of the accident, Barrientos was practicing her driving with a learner's permit under Lisah's supervision. Stouffer further argues the following facts are insufficient to give rise to vicarious liability: she did not order Barrientos to stay at home; she did not prohibit Barrientos from assisting Lisah on errands; and she did not dock Barrientos's pay for the day of the accident.

However, in addition to these facts, there are others which support the application of the doctrine. Stouffer expected Lisah to do the grocery shopping whenever she was visiting at home. Lisah had access to Stouffer's automobile for this purpose. Lisah also had the authority to avail herself of Barrientos's services, as reflected by the fact Barrientos had accompanied Lisah previously without objection by Stouffer.

On the day of the accident, Lisah took Barrientos along during Barrientos's normal working hours to assist Lisah with the grocery shopping. The collision occurred as Barrientos was returning home with Stouffer's groceries.

While Barrientos was unlicensed, she possessed a learner's permit and was practicing her driving under Lisah's supervision. Although in practicing her driving Barrientos was in part attending to her own business, she simultaneously was serving Stouffer by delivering her groceries.

Because it cannot be said it clearly appears Barrientos could not have been directly or indirectly serving Stouffer at the time of the accident (*Loper, supra,* 23 Cal.2d at p. 606; *Lockheed Aircraft Corp., supra,* 28 Cal.2d at pp. 758-759), we uphold the jury's determination Stouffer is vicariously liable.

### c. *Stouffer's further arguments unavailing.*

#### (1) *Liability attaches although not a business enterprise.*

 Stouffer avers the rationale for the doctrine of respondeat superior is the presumption the defendant/employer is a business enterprise which

generates revenues and/or a profit and is in the best position to absorb the risk of accidents as part of the cost of doing business. (See *Hinman v. Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 960 [88 Cal.Rptr. 188, 471 P.2d 988].) She contends the doctrine does not apply to her because she was running a household, not a business.

The purported distinction drawn by Stouffer is unpersuasive. Although a household employing domestic help is not an enterprise in the business sense, it nonetheless is an employer and its employees' activities in the scope of their employment may create a variety of risks to third parties. Further, although not a *business* enterprise, a household is better equipped than its domestic help to absorb the attendant risks through the purchase of adequate insurance. In addition, in view of the availability, cost and prevalence of such insurance (see *Rowland v. Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]), which is a significant factor in imposing tort liability, there is no reason to exempt domestic employers from vicarious liability for accidents caused by their employees in the scope of their employment.[4]

### (2) *Going and coming rule inapplicable.*

■ Next, Stouffer relies on the going and coming rule which precludes a finding of respondeat superior liability when the employee is commuting to or from the work location. (*Felix v. Asai* (1987) 192 Cal.App.3d 926, 931 [237 Cal.Rptr. 718].) Stouffer emphasizes Barrientos was travelling to Stouffer's home, her worksite, at the time of the accident.

The going and coming rule "is based on the theory that the employment relationship is suspended from the time the employee leaves his job until he returns and on the theory that during the normal everyday commute, the employee is not rendering services directly or indirectly to his employer." (*Felix, supra,* 192 Cal.App.3d at p. 931.) The rule obviously is inapplicable here. At the time of the accident, Barrientos was not commuting to her place of employment. Rather, she already was engaged in performing her duties, which included assisting Lisah with the grocery shopping.

---

[4]Although Stouffer also contends she is not vicariously liable for the acts of her adult daughter, Lisah, who was merely doing a favor for her mother (see *Edwards v. Freeman* (1949) 34 Cal.2d 589, 591-592 [212 P.2d 883]), the issue here is Stouffer's liability for the negligence of *Barrientos,* Stouffer's employee.

In view of the inapplicability of the going and coming rule, it is unnecessary to address whether this fact situation falls within certain exceptions to that rule which impose liability on employers.[5]

(3) *Purposes of respondeat superior doctrine met by applicability herein.*

In addition, Stouffer contends the purposes behind the doctrine of respondeat superior will not be served by holding her liable for the accident. (See *Mary M., supra*, 54 Cal.3d at p. 209.) First, the imposition of liability would not encourage accident prevention because she could not have prevented the accident, having no knowledge or expectation Barrientos would be practicing her driving in the Dodge Colt with Lisah. Second, there is no equitable distribution of the burden to those who profit from an enterprise because Stouffer was not running a business through which she could spread the risk of loss. And third, while the imposition of liability would compensate Miller, it would victimize the aged Stouffer by depleting her assets.

Contrary to Stouffer's argument, liability herein advances the purposes of the respondeat superior doctrine. As discussed, this accident occurred in the scope of Barrientos's employment. The doctrine of respondeat superior aims to compensate third parties for " 'losses caused by the torts of employees' " which occur in the course of the employment. (*Perez, supra*, 41 Cal.3d at p. 967.) Also, given the goal of " 'provid[ing] greater assurance of compensation for accident victims' " (*ibid.*), in view of the lack of assets of Barrientos, a housekeeper, imposing vicarious liability upon the employer is necessary to compensate Miller for her serious injuries. Further, such risk can be " 'broadly and equitably distributed' " (*ibid.*) through the purchase of adequate insurance by the employer. Accordingly, we reject Stouffer's contention there is no sufficient justification to apply the respondeat superior doctrine herein.

2. *Proposition 51, which eliminated joint and several liability for noneconomic damages, is unavailing to Stouffer, whose liability is co-extensive with that of Barrientos.*

Stouffer contends Proposition 51 limits liability for noneconomic damages to a defendant's percentage of fault, and because she was found to be only

---

[5]Under the special errand exception to the going and coming rule, an employee is within the scope of the employment while travelling to or from work while on a special errand either as part of his or her regular duties or at the specific order or request of the employer. (*Felix v. Asai, supra*, 192 Cal.App.3d at p. 931.)

Also, an employer is liable for accidents caused by an employee travelling to and from the work location if the employer received a substantial benefit from the employee's going and coming to justify making the employer responsible for the risks inherent in the travel. (*Hinman, supra*, 2 Cal.3d at pp. 962-963.)

vicariously liable under the doctrine of respondeat superior, she was not at fault for the accident and cannot be held liable for noneconomic damages.

As discussed below, Stouffer's reliance on Proposition 51 is misplaced because the basis of her liability is the doctrine of respondeat superior, not the doctrine of joint and several liability.[6]

a. *Background.*

Prior to the adoption of Proposition 51, the general rule was that contributory wrongdoers, whether they acted in concert or independently as concurrent or successive tortfeasors, were subject to joint and several liability. (*American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578, 586-590 [146 Cal.Rptr. 182, 578 P.2d 899]; *Ash* v. *Mortensen* (1944) 24 Cal.2d 654, 657 [150 P.2d 876]; *Apodaca* v. *Haworth* (1962) 206 Cal.App.2d 209, 213 [23 Cal.Rptr. 461]; 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 48, p. 110.) This rule flowed from the common law principle that a negligent tortfeasor is generally liable for all damage of which his or her negligence is *a* proximate cause. (*American Motorcycle Assn.*, *supra*, at p. 586.)

Proposition 51, also known as the " 'deep pocket' " initiative (*Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1245 [246 Cal.Rptr. 629, 753 P.2d 585]), was a response to a perceived crisis in tort law. The express purpose of Proposition 51 was "to eliminate the perceived unfairness of imposing 'all the damage' on defendants who were 'found to share [only] a fraction of the fault.' [Citation.]" (*DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 603 [7 Cal.Rptr.2d 238, 828 P.2d 140].) With that concern in mind, Proposition 51 modified the traditional common law " 'joint and several liability' " doctrine to limit an individual tortfeasor's liability for noneconomic damages to a proportion of such damages equal to that tortfeasor's comparative fault. (*Evangelatos*, *supra*, at p. 1192; *DaFonte*, *supra*, at p. 602.)

The findings and declaration of purpose behind Proposition 51 appear in section 1431.1, which states: "The People of the State of California find and declare as follows: [¶] (a) *The legal doctrine of joint and several liability*, also known as the 'deep pocket rule,' has resulted in a system of inequity and injustice that has threatened financial bankruptcy of local governments, other public agencies, private individuals and businesses and has resulted in higher

---

[6]It appears no decision has addressed whether Proposition 51 protects a defendant who is liable solely under the doctrine of respondeat superior from liability for noneconomic damages.

prices for goods and services to the public and in higher taxes to the taxpayers. [¶] (b) Some governmental and private defendants are perceived to have substantial financial resources or insurance coverage and have thus been included in lawsuits even though there was little or no basis for finding them at fault. *Under joint and several liability*, if they are found to share even a fraction of the fault, they often are held financially liable for all the damage. The People—taxpayers and consumers alike—ultimately pay for these lawsuits in the form of higher taxes, higher prices and higher insurance premiums. [¶] (c) Local governments have been forced to curtail some essential police, fire and other protections because of the soaring costs of lawsuits and insurance premiums. [¶] Therefore, the People of the State of California declare that to remedy these inequities, defendants in tort actions shall be held financially liable in closer proportion to their degree of fault. To treat them differently is unfair and inequitable. [¶] The People of the State of California further declare that reforms in the liability laws in tort actions are necessary and proper to avoid catastrophic economic consequences for state and local governmental bodies as well as private individuals and businesses." (Italics added.)

Section 1431.2, the key provision, states in relevant part: "(a) In any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, *the liability of each defendant for non-economic damages shall be several only and shall not be joint.* Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount." (Italics added.)

 b. *Proposition 51 did not abrogate doctrine of respondeat superior.*

 Seeking to avoid any liability for Miller's noneconomic damages, Stouffer contends her liability as employer is merely vicarious, she is without fault, and under Proposition 51 her liability for noneconomic damages must be based on her own proportion of fault, which is zero. (§ 1431.1.)

As indicated, Proposition 51 requires an apportionment of noneconomic damages based on each tortfeasor's *comparative fault.* (*DaFonte, supra,* 2 Cal.4th at p. 602.) By its terms, Proposition 51 is unavailing to Stouffer because it is directed at the doctrine of joint and several liability, while Stouffer's liability arises as a consequence of her *status* as Barrientos's employer pursuant to the doctrine of respondeat superior. Nothing in Proposition 51 altered the vicarious liability of an employer under that long-standing doctrine.

Unlike the doctrine of joint and several liability, the doctrine of respondeat superior imposes liability "irrespective of proof of the employer's fault." (*Perez, supra,* 41 Cal.3d at p. 967.) Liability is imposed on the employer as " 'a rule of policy, a deliberate allocation of a risk.' " (*Hinman, supra,* 2 Cal.3d at p. 959.) The "modern and proper basis of vicarious liability of the master is not his [or her] control or fault but the risks incident to [the] enterprise." (*Id.,* at p. 960.)

Thus, under the doctrine, an *innocent* principal or employer is vicariously liable for the torts of the agent or employee, committed while acting within the scope of the employment. (2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency and Employment, § 115, p. 109.) "Vicarious liability means that the act or omission of one person . . . is *imputed by operation of law* to another[.]" (*Far West Financial Corp.* v. *D & S Co.* (1988) 46 Cal.3d 796, 819 [251 Cal.Rptr. 202, 760 P.2d 399] (dis. opn. of Kaufman, J.), italics added.)

Accordingly, Stouffer and Barrientos were not joint, concurrent or successive tortfeasors, within the contemplation of the doctrine of joint and several liability. Rather, Barrientos's negligence is imputed to her employer pursuant to the doctrine of respondeat superior. Thus, Stouffer stands in Barrientos's shoes and the entire liability of these two defendants toward Miller is co-extensive.

If, as Stouffer urges, a vicariously liable employer is no longer liable for noneconomic damages, and an injured party is limited to recovering noneconomic damages from the negligent employee, who as here may have little in the way of assets, victims would go uncompensated while employers would be able to avoid much of the risk incident to their enterprise. Nothing in Proposition 51 compels such an result.

A vicariously liable employer does enjoy the benefit of Proposition 51 in that the employer's liability for noneconomic damages is restricted to the percentage of fault allocated to its employee. Hypothetically, had Miller also sued another motorist, a public entity, or a vehicle manufacturer, under Proposition 51 Stouffer would have been shielded from liability for noneconomic damages beyond those attributable to Barrientos, her own employee.

We observe vicarious liability of a person for the acts of others is not limited to the doctrine of respondeat superior. For example, the nonnegligent owner of a vehicle is liable for the negligence of a permissive driver. (Veh. Code, § 17150.) Also, the employer of an independent contractor is liable under the peculiar risk doctrine for certain harm caused to others by the

contractor's failure to take precautions, even though the employer has provided for such precautions in the contract or otherwise. (*Griesel* v. *Dart Industries, Inc.* (1979) 23 Cal.3d 578, 585 [153 Cal.Rptr. 213, 591 P.2d 503].)

These are additional examples where, for deliberate reasons of public policy, a defendant who is without fault is subject to vicarious liability for the negligence of another, pursuant to statute or case law. If, as Stouffer argues, Proposition 51 shields every defendant from liability for noneconomic damages beyond that attributable to that defendant's own fault, it largely would abrogate the vicarious tort liability of persons for the acts of others. Nothing in the language or intent of Proposition 51 conveyed to the voters in June 1986 dictates such a drastic change in California tort law.

We conclude Proposition 51 does not shield a vicariously liable employer who is liable under the doctrine of respondeat superior from liability for noneconomic damages.

### c. *DaFonte decision inapposite.*

Stouffer seizes on the Supreme Court's recent decision in *DaFonte, supra*, 2 Cal.4th 593, to support her position that Proposition 51 limits the liability of *every* defendant for noneconomic damages to the percentage attributable to that defendant's personal degree of fault.

In *DaFonte*, Mark, a 15-year-old ranch employee, was injured when his arm was drawn into a mechanical grape harvester. Mark obtained $23,676 in workers' compensation benefits from his employer's carrier. Mark and his family then sued the equipment manufacturer on theories of negligence and product liability. The jury allocated fault as follows: 15 percent to Mark, 45 percent to the employer, and 40 percent to the manufacturer. The jury found Mark's economic damages to be $355,000 and his noneconomic damages to be $300,000. (*DaFonte, supra*, 2 Cal.4th at pp. 596-597.)

The parties agreed the total damage award should be reduced by 15 percent, the amount attributable to Mark's comparative fault. They differed over the net award for noneconomic damages. (*DaFonte, supra*, 2 Cal.4th at p. 597.)

The manufacturer contended that pursuant to Proposition 51, the award for noneconomic damages should be reduced by another 45 percent, the amount attributable to the employer's comparative fault. (*DaFonte, supra*, 2 Cal.4th at p. 597.)

Mark argued Proposition 51 eliminated joint liability for noneconomic damages only among those defendants whose liability previously had been joint and several. He emphasized that when a worker suffered a compensable injury in employment, the employer was not a tort defendant and had neither joint or several liability for the employee's injuries beyond its obligation for worker's compensation benefits. (*DaFonte, supra,* 2 Cal.4th at p. 600.)

In rejecting Mark's theory, the Supreme Court held: "In *every* case, [Proposition 51] limits the joint liability of *every* 'defendant' to economic damages, and it shields *every* 'defendant' from any share of noneconomic damages beyond that attributable to his or her own comparative fault." (*DaFonte, supra,* 2 Cal.4th at p. 602, italics added.)

However, the question presented in *DaFonte* was whether, after Proposition 51, a manufacturer with a *comparative fault* of only 40 percent was liable for 85 percent of a plaintiff's noneconomic damages, including the 45 percent attributable to the negligent employer which was statutorily immune from suit. There, the plaintiff was seeking to saddle one tortfeasor, the manufacturer, with liability for the noneconomic damages attributable to another tortfeasor, the employer. The apportionment sought by the plaintiff flew in the face of Proposition 51.

*DaFonte* did not involve the doctrine of respondeat superior, under which the nonnegligent employer's vicarious liability mirrors the employee's liability. *DaFonte* therefore is inapposite and does not alter our conclusion herein.

3. *No merit to Stouffer's contention the verdict is hopelessly ambiguous.*

 Stouffer contends the verdict is "hopelessly ambiguous," entitling her to a new trial. Although there was no claim of fault or direct liability against Stouffer, the jury allocated 40 percent of the negligence to her and also found her vicariously liable for the accident.

The contention fails. As indicated, the trial court granted Miller's motion for JNOV and allocated 100 percent of the liability for negligence to Barrientos, making Stouffer's liability purely vicarious. Thus, no ambiguity is apparent to warrant retrial.

## DISPOSITION

The judgment is affirmed. Miller to recover costs on appeal.

Croskey, J., and Danielson, J.,* concurred.

A petition for a rehearing was denied September 23, 1992, and appellant's petition for review by the Supreme Court was denied November 19, 1992.

*Retired Associate Justice of the Court of Appeal, Second District, sitting under assignment by the Chairperson of the Judicial Council.