Filed 6/23/25  JBS Carriers v. Mendoza CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| JBS CARRIERS, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> MICHAEL MENDOZA, et al., <br><br> Defendants and Appellants. | D083415 <br><br><br> (Super. Ct. No. CIVDS2017102) |

APPEAL from judgment and posttrial orders of the Superior Court of San Bernardino County, Gilbert G. Ochoa, Judge.  Affirmed.

Haight Brown & Bonesteel, Arezoo Jamshidi, Krsto Mijanovic, Patrick F. McIntyre and Kaitlyn A. Jensen for Defendants and Appellants.

Wood Smith Henning & Berman, Stephen M. Caine, Wyeth E. Burrows and Steven D. Stutsman for Plaintiff and Respondent.

### INTRODUCTION

A JBS Carriers Inc. (JBS) tractor trailer crashed and tipped over on its side on the I-15 freeway, resulting in damage to the JBS truck and destruction of the load of lamb meat it was carrying.  JBS sued Cindy Ann

Diamond (the driver of a passenger vehicle) and Michael Mendoza (the driver of another tractor trailer), alleging their negligent driving caused the accident. JBS also sued Mendoza's employers, Mesilla Valley Transportation, Inc. (Mesilla) and OEP Holdings, LLC (OEP), on a respondeat superior theory.

By special verdict, the jury found Diamond, Mendoza, and Mesilla were negligent and their negligence was a substantial factor in causing JBS harm in the total amount of $204,528. The jury found JBS and OEP were not negligent. After being instructed that if Mendoza was acting within the scope of his employment when the accident occurred, "then his employer is responsible for any harm caused by . . . Mendoza's negligence," and the allocation of fault must total 100 percent, the jury assigned 80 percent fault to Diamond and 20 percent fault to Mesilla. The trial court entered a joint and several judgment for $204,528 against Mendoza, Mesilla, and Diamond.

On appeal, as they did in their motion for judgment notwithstanding the verdict (JNOV), Mendoza, Mesilla, and OEP (collectively, the Mesilla defendants)[1] argue the jury's assignment of zero "percentage of responsibility" to Mendoza was a verdict in favor of Mendoza, which then precludes a finding of vicarious liability against Mesilla. They argue the trial court's interpretation of the jury's special verdict and its subsequent costs award are erroneous. We conclude the trial court did not err and we affirm.

---

[1]     Diamond is not a party to this appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

## I.

### *The Accident*

The evidence at trial established an accident occurred in April 2018 on the I-15 freeway, a four-lane highway, in San Bernardino County in California. The JBS tractor trailer was in front, driving in the right lane of the two-lane highway. Mendoza was operating a Mesilla-owned tractor trailer in the same lane behind the JBS truck. Diamond was driving a passenger sedan in the left lane, further behind Mendoza.

Mendoza testified at trial that he sought to pass the JBS truck by moving into the left lane occupied by Diamond, and he saw Diamond's car in his mirror at a time when she was far enough away to safely change lanes. According to Diamond, she was "push[ed] . . . into the center of the freeway" when Mendoza's truck began to change lanes.

Both the JBS and Mesilla tractor trailers were equipped with a "dashcam" that recorded the events surrounding the accident. A JBS accident reconstructionist analyzed the video recordings and testified to his conclusions. According to the expert's calculations and review of the videos, as Mendoza began to initiate the lane change, Diamond "floored" her accelerator and tried to pass him before he could move over. Diamond was traveling at 88 miles per hour, or within a range of 80 to 90 miles per hour.

Mendoza continued to move to the left without noticing Diamond's car in his mirror. As he moved over, Diamond was unable to speed ahead of his truck. She lost control and her car veered onto the left shoulder of the highway. Once there, the left wheels of her car were no longer on the paved surface of the road. Instead, they were on the "sandy gravel area of the center median." Diamond's car continued to accelerate until she passed

3

Mendoza's truck, but lost control again when she re-entered the paved portion of the highway. Her car then struck the JBS truck, causing it to crash and tip over onto its side. The accident damaged the JBS truck and trailer and destroyed its cargo of lamb meat.

## II.

### *The Pleadings*

JBS's complaint asserted causes of action for negligence and negligence per se against Mendoza, Mesilla, and Diamond. JBS alleged Mendoza and Diamond failed to exercise reasonable care while driving on the I-15 freeway, specifically they were both driving inattentively "at a speed unsafe for the traffic conditions." JBS sought $204,517.51 in economic damages.

Significant here, JBS's complaint asserted Mesilla was vicariously liable for JBS's damages because Mendoza was employed by Mesilla and driving on the highway at the time of the collision within the scope of his employment. In response to discovery propounded by JBS, Mendoza stated he was employed by OEP. JBS then added OEP as a named defendant. The sole theory for liability asserted in the complaint against Mesilla and OEP was respondeat superior. The complaint did not allege independent tort liability on the part of either company.

All four defendants filed cross-complaints for comparative equitable indemnity against one another: Diamond against Mendoza and Mesilla, and Mendoza, Mesilla and OEP against Diamond.

## III.

### *Jury Instructions*

At trial, the jury was provided with standard instructions on the principles of ordinary negligence and negligence per se.

4

A.    *Causation*

Relevant here, three jury instructions addressed the element of causation.  As part of this series, at the defendants' request, the trial court specifically instructed the jury on the elements of the affirmative defense that another party's conduct (Diamond's) was a superseding cause of JBS's harm.  The trial court used a modified version of CACI No. 432, as follows:

**432[.] Affirmative Defense – Causation: Party's Conduct as Superseding Cause**

Michael Mendoza claims that he is not responsible for JBS's harm because of the later misconduct of Cindy Diamond.  To avoid legal responsibility for the harm, Michael Mendoza must prove all of the following:

1. That Cindy Diamond's conduct occurred after the conduct of Michael Mendoza;
2. That a reasonable person would consider Cindy Diamond's conduct a highly unusual or an extraordinary response to the situation;
3. That Michael Mendoza did not know and had no reason to expect that Cindy Diamond would act in a negligent manner; and
4. That the kind of harm resulting from Cindy Diamond's conduct was different from the kind of harm that could have been reasonably expected from Michael Mendoza's conduct.

B.    *Respondeat Superior*

Consistent with the complaint, the only theory at trial for Mesilla and OEP's liability was vicarious liability.  The parties agree JBS did not produce any evidence of independent negligence by Mesilla or OEP.  The trial court provided the jury with two instructions that addressed the principle of respondeat superior, CACI No. 3700 and CACI No. 3703.

5

## 3700. Introduction to Vicarious Responsibility

An employer is responsible for harm caused by the wrongful conduct of its employees while acting within the scope of their employment.

## 3703. Legal Relationship

If Michael Mendoza was acting within the scope of his employment when the incident occurred, then his employer is responsible for any harm caused by Mr. Mendoza's negligence.

The instructions thus explained that an employer is vicariously liable for an employee's negligence when the employee is acting within the scope of employment, but they did not explain that the employer's liability is shared and coextensive with that of the employee.

C.    *Comparative Fault*

To address possible comparative negligence on the part of JBS and the cross-complaints for comparative equitable indemnity, the jury was instructed to apportion fault amongst the parties if it found negligence on the part of more than one of them.  The instruction specifically told jurors the percentages assigned to the parties must total 100 percent.  The instruction provided:

## 406. APPORTIONMENT OF RESPONSIBILITY

Cindy Diamond claims that the negligence of Michael Mendoza contributed to JBS['s] harm.  To succeed on this claim, Cindy Diamond must prove both of the following:

1.  That Michael Mendoza was negligent; and
2.  That the negligence of Michael Mendoza was a substantial factor in causing JBS['s] harm.

Michael Mendoza, Mesilla . . . , and OEP . . . claim that the negligence of Cindy Diamond and JBS . . . contributed to

6

JBS['s] harm.  To succeed on this claim, Michael Mendoza, Mesilla . . . , and OEP . . . must prove both of the following:

1.  That Cindy Diamond and JBS . . . were negligent; and
2.  That the negligence of Cindy Diamond and JBS . . . was a substantial factor in causing JBS['s] harm.

If you find that the negligence of more than one person, including Michael Mendoza, Cindy Diamond, and JBS[2] was a substantial factor in causing JBS['s] harm, you must then decide how much responsibility each has by assigning percentages of responsibility to each person listed on the verdict form. *The percentages must total 100 percent.*  (Italics added.)

You will make a separate finding of JBS['s] total damages, if any. . . .

## IV.

### *Jury Verdict*

The jury rendered its decision by special verdict on October 11, 2022.[3] The special verdict form had six sets of questions.

The first section asked whether each defendant was negligent.  The jury answered "Yes" for Diamond, Mendoza, and Mesilla.  It answered "No" for OEP.

---

[2]    The instructions were inconsistent in that they referred to negligence by "JBS" when discussing the allocation of fault, but referred to negligence by "Robert Hess," the JBS driver, when discussing the standard of care.

[3]    Contrary to JBS's contention, the jury rendered a special verdict, not a general verdict.  The verdict asked the jury to make factual findings from which the trial court drew legal conclusions and rendered judgment.  (Code Civ. Proc., § 624; see *Falls v. Superior Court* (1987) 194 Cal.App.3d 851, 854–855.)  All further undesignated statutory references are to the Code of Civil Procedure.

7

The second section addressed causation and asked the jury to indicate whether, for each defendant it found negligent, their negligence was a substantial factor in causing harm to JBS. The jury answered "Yes" for Diamond, Mendoza, and Mesilla. Although not required by the instructions to answer the last question, the jury responded "No" for OEP.

In the third section, the jury found JBS's total damages were $204,528.

In the fourth and fifth sections, the jury found JBS was not negligent and that no negligence on its part was a substantial factor in causing its harm.

The sixth section asked, "What percentage of responsibility for JBS['s] harm do you assign to the following?" and set forth a list of all the parties with spaces for the jury to assign each a percentage of responsibility.[4] And it specifically indicated the total should add up to 100 percent. We recite this section verbatim here:

6.    What percentage of responsibility for JBS['s] harm do you assign to the following? Insert a percentage only for those who received "yes" answers in questions 2 and 5.

| | |
|---|---|
| CINDY ANN DIAMOND | _____ % |
| MICHAEL MENDOZA | _____ % |
| MESILLA VALLEY TRANSPORTATION | _____ % |
| OEP HOLDINGS, LLC | _____ % |
| JBS CARRIERS, INC. | _____ % |
| **TOTAL** | **100%** |

---

[4]    The original proposed verdict form asked jurors to apportion fault between Diamond and Mendoza only. At the request of Mendoza, Mesilla, and OEP, and over objections by Diamond and JBS, the final version of the verdict form added JBS, Mesilla, and OEP.

Notably, the jury asked only one question during their deliberations and it was about this part of the verdict form. The form told the jury to "[i]nsert a percentage only for those who received 'yes' answers in questions 2 and 5." As noted, in its answers to questions 2 and 5, the jury found negligence by Diamond, Mendoza, and Mesilla to have been a substantial factor in causing harm to JBS. The only theory for Mesilla's potential liability, however, was based on the doctrine of respondeat superior and was therefore coextensive with that of Mendoza. (*Hinman v. Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 960.) Confronted with the verdict form, which required the jury's apportionment of responsibility to add up to 100 percent, but which also appeared to ask the jury to separately apportion responsibility as to Mendoza and Mesilla, the jury sent the trial court the following question:

> Question # 6 verdict form. We have determined that Mr. Mendoza is responsible for 20%. However, 3703, "Legal Responsibility" states Mr. Mendoza's employer ([Mesilla)] is responsible. Do we mark 20% for Michael Mendoza or [Mesilla]?

After consulting with the parties, the trial court responded: "Dear Jurors: [¶] Please disregard 3703." Significantly, the court did *not* instruct the jury to disregard the other instruction that addressed vicarious liability, CALCRIM No. 3700. Neither party objected to the court's response.

After receiving the trial court's answer, the jury assigned the percentage of responsibility for JBS's harm in section 6 as follows:

| | |
|---|---:|
| CINDY ANN DIAMOND | 80% |
| MICHAEL MENDOZA | 0% |
| MESILLA VALLEY TRANSPORTATION | 20% |
| OEP HOLDINGS, LLC | 0% |
| JBS CARRIERS, INC. | 0% |
| **TOTAL** | **100%** |

9

*Posttrial Motions and Judgment*

JBS and three of the defendants—Mendoza, Mesilla and OEP (again, collectively Mesilla defendants)—filed competing motions for JNOV. Each side argued for a different interpretation of the jury's allocation of responsibility in response to the sixth section of the verdict form.

JBS contended the jury erred when it assigned 20 percent responsibility to Mesilla and 0 percent responsibility to Mendoza. It argued the verdict form was defective and misled the jury, because it invited jurors to allocate fault to Mesilla and OEP when no evidence was presented of independent negligence on their part. In its view, the jury's error in completing the verdict form required entry of "judgment notwithstanding the verdict placing 20% liability on Mendoza."

The Mesilla defendants argued the jury's answer to section 6 of the verdict form was a de facto defense verdict in favor of Mendoza and against JBS on the negligence cause of action asserted in the operative complaint. In their view, the "0%" by Mendoza's name was a finding by the jury on the element of causation. They argued the only way for the jury to have found Mendoza's negligence was a substantial factor in causing harm to JBS (in section 2) yet to have found he was "0%" responsible for the harm (in section 6) was to have found that Diamond's negligence was a superseding cause of the collision. Consequently, they believed, the trial court was required to enter judgment in favor of Mesilla. As they explained, "[t]he jury's determination that . . . Mendoza was 0% liable for the subject incident means that Mesilla . . . cannot have any vicarious liability for . . . Mendoza as a matter of law. There was no evidence presented to the jury upon which any

other basis for liability could be attributed to Mesilla . . . , so it is respectfully submitted that judgment of 0% liability as to Mesilla . . . must be entered."

The trial court denied the competing JNOV motions. The court noted the jury returned a verdict attributing 80 percent liability to Diamond and 20 percent liability to Mesilla. It found there was "substantial expert testimony . . . as well as simulation testimony and the dash cam video" to support the jury's verdict "given the split of liability." Referring to section 6 of the verdict form and the jury's question about it, the court found "it was clear the jurors were possibly confused as to how vicarious liability was applied," and noted the parties not only failed to object but agreed to answer the jury's question as they did. Nevertheless, the court found "[t]he jury correctly sought to apportion 20% liability to the middle vehicle [driven by Mendoza]." It observed the jury had "done an excellent job of figuring out what happened here (within a reasonable ballpark given the extensive expert reconstruction testimony) and in apportioning that liability when the parties could not."

After the trial court's ruling, the parties filed competing proposed judgments. The judgment proposed by JBS provided it was a prevailing party against Mesilla but not Mendoza. The judgment proposed by the Mesilla defendants provided they were the prevailing parties on the complaint as well as both cross-complaints. After conducting a hearing, the trial court determined in a written ruling that neither proposed judgment "properly capture[d] the special verdict."

Starting with Mendoza's liability for the negligence cause of action asserted in the complaint, the trial court explained the jury addressed his liability to JBS in response to the questions in sections 1 and 2 of the verdict form. The jury found he was negligent and his negligence was a substantial factor in causing JBS's harm. That harm consisted entirely of economic

11

damages. In response to the question in section 4, the jury further found JBS not negligent. Therefore, pursuant to Civil Code section 1431, Mendoza was jointly and severally liable for JBS's damages along with the other defendants whose negligence was found to be a substantial factor in causing harm in response to the questions in sections 1 and 2. This included Mesilla (on a respondeat superior theory) and Diamond (based on her own negligence).

Turning to Mendoza's liability for the comparative equitable indemnity cause of action asserted in Diamond's cross-complaint, the trial court found the jury addressed his liability to Diamond in section 6 of the verdict form. The court found the jury allocated the liability "among the drivers" "on an 80–20 split." The court explained "[t]he allocation concerns the [c]ross-[c]omplaint's apportionment and giving one or the other the ability to seek contribution if they pay more than the share allocated to them."

The trial court rejected the claim by the Mesilla defendants that liability could not be imposed on Mesilla because the jury purportedly found Mendoza not liable in response to the questions addressing the cross-complaint in section 6. The court found the inclusion of Mesilla and OEP in this section confused the jury. However, as the court explained, it previously ruled that Mendoza was "20% liable but that liability was placed next to [Mesilla's] name because it was the employer who was vicariously liable for Mendoza's negligence." The court further explained, "the jury allocated the 20% liability to [Mesilla] because it was the employer of Mendoza who was 20% at fault for the accident, as the middle vehicle, that caused economic harm to JBS," and "Mendoza and [Mesilla's] liability is essentially joint."

Finally, the trial court found that Mendoza and Mesilla "invited the error and confusion" by proposing the final special verdict. The court ruled

12

they "cannot complain now and argue [they] hold[ ] no liability or Mendoza was not found liable."

The trial court prepared and drafted the final judgment itself. In the preamble, the court restated its ruling on the "dueling" JNOV motions as follows: "the jury's allocation was correctly apportioning 20% of the liability to the middle car. Under the vicarious liability doctrine, the employer stands in the shoes of the employee, and the liability of the employee and employer are co-extensive."

The trial court entered judgment as follows: Under JBS's complaint, (1) JBS "is entitled to Judgment jointly and severally" against Diamond, Mendoza and Mesilla for $204,528 in economic damage; and (2) OEP is entitled to a judgment against JBS. (3) Under Diamond's cross-complaint, Diamond "is entitled to Judgment of 20% apportionment of" JBS's damages allocated to Mendoza and Mesilla. (4) Under Mendoza's and Mesilla's cross-complaint against Diamond, Mendoza and Mesilla "are entitled to Judgment of 80% apportionment of" JBS's damages allocated to Diamond. And (5) OEP's cross-complaint against Diamond is dismissed since it was not found liable under JBS's complaint.

## DISCUSSION

### I.

*The Trial Court Correctly Interpreted the Jury's Special Verdict*

The Mesilla defendants contend the trial court incorrectly interpreted the jury's special verdict when ruling on their JNOV motion and rendering judgment against Mendoza and Mesilla. They contend Mendoza and Mesilla were entitled to judgment in their favor on JBS's complaint and for equitable indemnity on their cross-complaint against Diamond. In their view, the jury found Mendoza not liable on the complaint and cross-complaints when it

13

indicated he had "0%" responsibility for JBS's harm on the verdict form. We are not persuaded. Read in context—especially given the requirement on the verdict form that the percentages apportioning responsibility total 100 percent—the jury's indication that Mesilla had "20%" responsibility was a clear and unambiguous finding of shared, coextensive liability on the part of both Mesilla and Mendoza with respect to the causes of action asserted in the cross-complaints.

A special verdict is one "by which the jury find[s] the facts only, leaving the judgment to the [c]ourt." (§ 624.) If the jury's verdict appears potentially ambiguous or inconsistent, the party adversely affected should request clarification, and the court should send the jury out again to resolve the ambiguity or inconsistency. (§ 619; *Zagami, Inc. v. James A. Crone, Inc.* (2008) 160 Cal.App.4th 1083, 1091 [potential ambiguity]; *Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338, 357 (*Singh*) [potential inconsistency].) "But where no objection is made before the jury is discharged, it falls to 'the trial judge to interpret the verdict from its language considered in connection with the pleadings, evidence and instructions.' " (*Woodcock v. Fontana Scaffolding & Equip. Co.* (1968) 69 Cal.2d 452, 456–457 (*Woodcock*).)

On appeal, if "the trial judge does not interpret the verdict or interprets it erroneously, an appellate court will interpret the verdict if it is possible to give a correct interpretation." (*Woodcock, supra,* 69 Cal.2d at p. 457.) The appellate court's interpretation is de novo. (*Singh, supra,* 186 Cal.App.4th at p. 358.)

JBS sought economic damages for negligence on a direct liability theory against Mendoza. To prove him liable, JBS was required to prove (1) Mendoza was negligent, (2) JBS was harmed, and (3) Mendoza's

14

negligence was a substantial factor in causing the harm. (Civ. Code, § 1714; *Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917 [basic elements]; *Mitchell v. Gonzalez* (1991) 54 Cal.3d 1041, 1049 [substantial factor test].) The jury was properly instructed on each of these required elements of proof.

In response to specific questions in sections 1, 2, and 3 of the special verdict form, the jury found Mendoza was negligent, that his negligence was a substantial factor in causing harm to JBS, and JBS was damaged in the amount of $204,528. The jury found these same facts true for Diamond, also on a direct liability theory. And it found no comparative negligence by JBS. In California, each tortfeasor whose negligence is a proximate cause of economic harm is jointly and severally liable for all compensable economic damages attributable to the injury. (*American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578, 582 [general rule]; Civ. Code, §§ 1431.1–1431.2 [general rule continues to apply to economic damages after the passage of Prop. 51].) The trial court therefore correctly entered judgment in favor of JBS and against Mendoza for $204,528 on the complaint.

The trial court also correctly entered judgment in favor of JBS and against Mesilla for $204,528 on JBS's complaint. As noted, JBS sued Mesilla on a vicarious liability theory. The jury was instructed that "[a]n employer is responsible for harm caused by the wrongful conduct of its employees while acting within the scope of their employment." (Boldface omitted.) The instruction correctly stated the law. Under the doctrine of respondeat superior, an employer "is responsible to third persons for the negligence of [its] agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as a part of the transaction of such business." (Civ. Code, § 2338.; *Miller v. Stouffer* (1992) 9 Cal.App.4th 70, 77 (*Miller*).)

15

Significantly, " '[v]icarious liability means that the act or omission of one person . . . is imputed by operation of law to another.' " (*Miller, supra,* 9 Cal.App.4th at p. 84, italics omitted.) Here, it was undisputed there was no evidence at trial that could support a finding that Mesilla was an independent tortfeasor. Thus, while it would have been appropriate to ask the jury in a separate question whether Mendoza was employed by Mesilla, and if so, whether he was acting within the scope of his employment while he was driving on the day of the incident, it was not confusing or inappropriate to proceed as the trial court did here and ask jurors whether Mesilla was negligent and whether its negligence was a substantial factor in causing harm to JBS. Under the doctrine of respondeat superior, the employer stands in the shoes of the employee. (*Ibid.*) The instructions clearly explained the requirements for finding Mesilla responsible for Mendoza's negligence on a vicarious liability theory and the verdict form provided an unambiguous way for jurors to communicate their findings in sections 1, 2, and 3, which they did.

Finally, the trial court's interpretation of the jury's apportionment of fault—in section 6 of the verdict form—was also sound. We reject the Mesilla defendants' contention that the jury's allocation of "0%" responsibility to Mendoza was inconsistent with its allocation of "20%" responsibility to Mesilla. Jurors were correctly instructed that "[a]n employer is responsible for harm caused by the wrongful conduct of its employees while acting within the scope of their employment" (boldface omitted), but the verdict form did not allow the jury to write down "80%" next to Diamond's name for her comparative negligence, "20%" next to Mendoza's name for his comparative negligence, and "20%" next to Mesilla's name for its responsibility on a vicarious liability theory. *The instructions and the verdict form both told the*

16

*jury the percentages must total 100 percent.* Given this restriction, and the instruction that an employer is responsible for harm caused by the wrongful conduct of its employees, we conclude the 20 percent allocation of responsibility to Mesilla constitutes a clear and unambiguous finding the jury found Mesilla vicariously liable for Mendoza's comparative negligence, which it found to be 20 percent of the total harm. (See *Brown v. Regan* (1938) 10 Cal.2d 519, 520–523 [addressing a situation similar to the one here and concluding it was "obvious" the jury "was attempting to pass on to the owner of the automobile the liability of the operator of the automobile"].)

We also reject the Mesilla defendants' contention the jury assigned "0%" liability to Mendoza because it found Diamond's conduct to be a superseding cause of JBS's injury. The jury here manifestly rejected their superseding cause defense.

Jurors were correctly instructed on the relevant principles of causation with a series of three instructions, "Causation: Substantial Factor," "Causation: Multiple Causes," and "Affirmative Defense—Causation: Party's Conduct as Superseding Cause." (Boldface omitted.) The instructions defined "substantial factor" and explained how legal responsibility is determined in the case of multiple causes. In general, as the instructions explained, a person whose negligence is a substantial factor in causing harm "cannot avoid responsibility just because some other person, condition, or event was also a substantial factor." However, a person can avoid responsibility when a third party's unforeseeable, unusual, and extraordinary conduct meets the definition of a superseding cause. (*Lugtu v. California Highway Patrol* (2001) 26 Cal.4th 703, 725–726.)

Based on these instructions, jurors knew Mendoza could avoid responsibility for negligence that was a substantial factor in causing harm to

JBS if Diamond's conduct was a superseding cause. Nevertheless, in response to the questions in section 2, they specifically found that Mendoza's negligence was in fact a substantial factor in causing JBS harm. In addition, in response to the questions in section 6, they apportioned Diamond's comparative negligence at 80 percent, not 100 percent as would be the case if they found her conduct had superseded Mendoza's negligence and constituted the sole proximate cause of the accident.

" 'A verdict should be interpreted so as to uphold it and to give it the effect intended by the jury, as well as one consistent with the law and the evidence.' " (*All-West Design, Inc. v. Boozer* (1986) 183 Cal.App.3d 1212, 1223.) We conclude the trial court here did exactly that. Based on our de novo review, the court correctly (1) denied the Mesilla defendants' JNOV motion, (2) entered judgment jointly and severally against Mendoza and Mesilla and in favor of JBS for $204,528 on the complaint, and (3) entered judgment against Mendoza and Mesilla and in favor of Diamond on her cross-complaint for a 20 percent apportionment of JBS's damages.

## II.

### *Surviving Costs Issues*

The remaining issues raised by the Mesilla defendants on appeal involve the trial court's rulings on the parties' motions to tax costs. Most of their contentions are premised on the assumption the jury's verdict rendered Mendoza and Mesilla not liable to JBS. But as we have just discussed, we reject this premise. We therefore limit our discussion to two issues that do not assume Mendoza and Mesilla are prevailing parties.

18

A.    *The Mesilla Defendants Did Not Obtain a More Favorable Judgment Than Their Section 998 Offer*

Costs in the superior court are generally allowed as a matter of course upon judgment in favor of the plaintiff in an action for recovery of money or damages. (§§ 1031–1032.) To encourage settlement, section 998 overrides and/or supplements this general rule under certain circumstances. In relevant part, section 998 provides: "(a) The costs allowed under [s]ections 1031 and 1032 shall be withheld or augmented as provided in this section. [¶] (b) Not less than 10 days prior to commencement of trial . . . any party may serve an offer in writing upon any other party to the action to allow judgment to be taken or an award to be entered in accordance with the terms and conditions stated at that time. [¶] . . . [¶] (c)(1) If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover their postoffer costs and shall pay the defendant's costs from the time of the offer. In addition, . . . the court or arbitrator, in its discretion, may require the plaintiff to pay a reasonable sum to cover postoffer costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the defendant. [¶] . . . [¶] (d) If an offer made by a plaintiff is not accepted and the defendant fails to obtain a more favorable judgment or award . . . , the court or arbitrator, in its discretion, may require the defendant to pay a reasonable sum to cover postoffer costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the plaintiff, in addition to plaintiff's costs."

19

On September 9, 2021, the Mesilla defendants tendered to JBS a collective section 998 offer to compromise for the sum of $75,000. JBS did not accept the offer.

The Mesilla defendants contend their offer was more favorable than the judgment obtained against them. In their view, the judgment against them for purposes of section 998 is $40,905.60. They contend this is the correct measure of damages because the jury returned a verdict for "$204,528, attributing only 20% of this amount, or $40,905.60" to them. We disagree.

The defendants' logic and analysis ignore the joint and several nature of JBS's judgment. JBS sued Mendoza, Diamond, Mesilla, and OEP on a theory of joint and several liability. JBS did not seek any non-economic damages, so there was no basis for any kind of pro rata damages enforceable severally against any of the defendants. (Civ. Code, §§ 1431.1–1431.2) The offer to compromise by the Mesilla defendants is therefore correctly construed to be an offer to have $75,000 entered against them jointly and severally. (Cf. *Brown v. Nolan* (1979) 98 Cal.App.3d 445, 451.) After proceeding to trial, JBS obtained a joint and several judgment against two of them for a demonstrably larger amount, $204,528. The trial court correctly ruled this was a more favorable result.

B.     *The Mesilla Defendants Forfeited Their Contention the Trial Court Erred by Failing to Apportion Certain Costs to Diamond*

In their motion to tax costs, the Mesilla defendants specifically asked the trial court to apportion and strike the costs incurred by JBS litigating its case against *OEP*. The court denied the request. It concluded that JBS "would have incurred nearly all its costs regardless of whether or not OEP was named as a [d]efendant. Filing fees, jury fees, service of process, statutory reporter fees, and models, enlargements, and photocopies of

20

exhibits would presumably all have been incurred either way.  All expert witness fees appear to relate to accident reconstruction and would have been incurred regardless." On this basis, the court declined to reduce JBS's costs.

On appeal, the Mesilla defendants contend for the first time the trial court should have taxed costs JBS incurred that were exclusively attributable to litigating its case against *Diamond*.  We have reviewed the citations to the record cited in the opening brief and we find no record this issue was raised below.  We therefore find the issue forfeited.

## DISPOSITION

The December 20, 2022 order denying Mesilla's JNOV motion, the May 24, 2023 judgment by way of jury verdict, the September 7, 2023 order granting in part JBS's motion to tax costs, the October 12, 2023 order granting in part Mendoza, Mesilla, and OEP's motion to tax JBS's costs, and the November 15, 2023 amended judgment are affirmed.  JBS is awarded its cost on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

DO, J.

WE CONCUR:

McCONNELL, P. J.

DATO, J.

21